1
Larry H. Clough (State Bar No. 86104)
2
lhclough@sbcglobal.net
Attorney for Plaintiff, George Clinton
3
21757 Devonshire Street, Suite 2
Chatsworth, California 91311
4
Telephone: (818) 709-8388
5
Facsimile (818) 709-8372



6

7

8

9

## UNITED STATES DISTRICT COURT

10

## CENTRAL DISTRICT OF CALIFORNIA

11

12

GEORGE CLINTON,
13
                    Plaintiff,
14
        vs.
15
NENE MONTES, an individual and d/b/a
16
TERCER MUNDO, INC., a suspended Cal.
17
corp, CHARLY ACQUISITIONS, LTD, a
Nevis private company,
18
LICENSEMUSIC.COM, ApS, a Denmark
19
private company, ARMEN BOLADIAN, an
20
individual, WESTBOUND RECORDS,
INC., a Mich. corp, ACE RECORDS, LTD,
21
a United Kingdom private company,
22
UNION SQUARE MUSIC, LTD, a United
Kingdom private company, SNAPPER
23
MUSIC, LTD, a United Kingdom private
24
company, ATOM MUSIC, LTD, an Ireland
private company, ARTISTRY MUSIC,
25
LTD, a United Kingdom private company,
26
SYNC2PICTURE, LLC, a Mich. limited
liability company, X5 MUSIC GROUP, a
27
Sweden private company,
28
                    Defendants.

CV11-10062 JAK (JEMx)

Case No:

COMPLAINT FOR:

I. DECLARATORY JUDGMENT
(28 U.S.C. §2201)
II. COPYRIGHT INFRINGEMENT
(17 U.S.C. §501)
III. UNAUTHORIZED USE OF
PRE-1972 SOUND RECORDINGS
(Cal Code § 980)
IV. RESCISSION (Cal Code §1689)
V. FRAUD (Common Law)
VI. INJURIOUS FALSEHOOD
(Common Law)
VII. TRADEMARK
COUNTERFEIT (15 U.S.C. §1114)
VIII. TRADEMARK
INFRINGEMENT (15 U.S.C. §1114)
IX. UNFAIR COMPETITION
(15 U.S.C. §1125(a))
X. FALSE DESIGNATION OF
ORIGIN (15 U.S.C. §1125(a))
XI. UNFAIR TRADE PRACTICES
(Cal Code §17200)
XII. MISAPPROPRIATION OF
LIKENESS (Cal Code §3344)

1

XIII. MISAPPROPRIATION OF
LIKENESS (Common Law)
XIV. ACCOUNTING
XV. CONSTRUCTIVE TRUST

Jury Trial Demanded

Plaintiff, George Clinton, ("Plaintiff" or "Clinton") by and through undersigned counsel, alleges upon personal knowledge, information, and belief, as follows:

## Nature of Action

1.       Clinton asks for damages, declaratory relief, permanent injunctive relief, and equitable relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the Lanham Act, 15 U.S.C. §§ 101 *et seq.*, and other common and statutory laws as set forth herein, for the unauthorized use, sale, and other commercial exploitation of the sound recordings owned by Clinton under the artist name Funkadelic originally released by Warner Brothers on the albums "Uncle Jam Wants You," "One Nation Under a Groove," "Hardcore Jollies," and "Electric Spanking of War Babies." ("Warner Brothers Sound Recordings"), as well as the unauthorized use of the Funkadelic trademark and Clinton's name, likeness and image for the unauthorized use, sale and commercial exploitation of these infringing products.

2.      As defined in 17 U.S.C. § 101, the United States of America, Ireland, Denmark, Sweden, and the United Kingdom are World Trade Organization (WTO) member countries, and signatories to the Geneva Phonograms Convention and the World Intellectual Property Organization (WIPO) Performance and Phonograms Treaty.  Under the WIPO Performance and Phonograms Treaty and the WTO Agreement, the minimum term of protection for sound recordings is 50 years from the end of the calendar year in which the sound recordings were first fixed.

3.      On June 17, 2005, in *Montes v. Kaplan, et al*, Case No. 03 CV 8955 (C.D. Cal), the Honorable Manuel Real issued an Order and Judgment which decreed that since 1993, Clinton is the owner of all rights, titles, and interests in the sound recordings contained on the albums, "One Nation Under a Groove," "Uncle Jam Wants You," "Hardcore Jollies," and "Electric Spanking of War Babies," originally released on the Warner Brothers label, including the copyrights therein. ("Warner Brothers Sound Recordings")

4.      Clinton is also the original creator and has rights, titles and interests in the Funkadelic sound recordings released by Westbound Records ("Westbound"), more specifically identified as the single "Music for My Mother" and the albums "Funkadelic," "Maggot Brain," "Free your Mind and your Ass will Follow," "America Eats Its Young," "Cosmic Slop," "Standing on the Verge of Getting it

On," "Let's Take it to the Stage," and "Tales of Kidd Funkadelic." ("Westbound Sound Recordings")

5.    In Clinton's original 1969 agreement with Westbound, Clinton granted Westbound rights to the Westbound Sound Recordings in exchange for Westbound fulfilling its ongoing duty to account and pay 50% of monies collected to Clinton for the sale and other commercial exploitation of those sound recordings. Westbound has been selling, licensing, and otherwise exploiting the Westbound Sound Recordings since original released and for over the last four years, Westbound has not provided Clinton with an accounting or royalties for those sound recordings. Clinton asks for enforcement of rescission, declaratory relief, permanent injunctive relief, and equitable relief pursuant to common and statutory law, for the sale and other commercial exploitation of the Westbound Sound Recordings.

6.    Clinton owns the Funkadelic trademark, Registration No. 3,016,720, as well as his personal and valuable rights of publicity to his name, likeness & image.

7.    The defendants have unlawfully utilized the Westbound Sound Recordings, Warner Brothers Sound Recordings, Funkadelic trademarks and Clinton's name, likeness and image, in new re-releases and compilations ("Infringing Sound Recordings"), without the permission of Plaintiff and without

accounting or paying royalties to Plaintiff.  Accordingly, Plaintiff seeks 1) an order enforcing the June 17, 2005 Order and Judgment issued by the Honorable Manuel Real in *Montes v. Kaplan, et al.*, Case No. 03 CV 8955 (C.D. Cal); 2) an order enforcing Plaintiff's rescission of contract as to the Westbound Sound Recordings; 3) recovery of money damages resulting from the wrongful acts of defendants including all attorneys' fees and costs associated with bringing this action; and 4) an order impounding for destruction the infringing materials and enjoining defendants from the production, marketing, performing and/or sale of the Infringing Sound Recordings.

8.     Clinton has complied with all of the laws pertinent to sound recordings as copyrighted works, and the copyright registration on the sound recordings have been registered with the Copyright Office.  At all times pertinent hereto, Clinton has complied with all applicable provisions of the copyright and trademark laws of the United States of America.

**Jurisdiction and Venue**

9.     This action for declaratory judgment, copyright infringement, trademark infringement, and unfair competition arises under the Declaratory Judgment Act, 28 U.S.C. § 2201; the Copyright Act, 17 U.S.C. §§ 101 *et seq.* and the Lanham Act, 15 U.S.C. §§ 101 *et seq.* The Court's subject matter jurisdiction is founded in 28 U.S.C. §§ 1331 and 1338, which provides, in pertinent part, the

district courts shall have original jurisdiction for any civil action arising under any Act of Congress relating to copyrights. This court has supplemental jurisdiction over state and common law claims under 28 U.S.C. § 1367.

10.    Venue is proper under 28 U.S.C. §§ 1391(b) in that a substantial part of the events of omissions giving rise to the claims occurred in this district, and the 2005 Order and Judgment by Honorable Manuel Real was issued in this district.

11.    Plaintiff is informed and believes and thereon alleges this Court has personal jurisdiction over defendants because they regularly solicit and conduct business in the State of California and have committed tortious acts within the State of California.   Further, as of the date of the filing of this complaint, all of the infringing albums are available for sale on www.amazon.com, and are further in-stock and shipped directly from Los Angeles, California, through the Amazon merchant, White Crow Media.

### Parties

12.    George Clinton is a resident of the State of Florida, and a living legend in the entertainment industry. He is a songwriter, artist, publisher, and producer for the acts "Parliament," "Funkadelic," "The Pfunk Allstars" and the solo act "George Clinton."

13.    Armen Boladian is a resident of the State of Michigan and Clinton's former business partner.

14.     Westbound Records, Inc. is a Michigan corporation owned by Armen Boladian.

15.     Upon information and belief, Nene Montes is a resident of the State of Florida and Clinton's former business manager.

16.     Upon information and belief, Tercer Mundo is a suspended California corporation owned by Nene Montes.

17.     Upon information and belief, Charly Acquisitions, Ltd is a private limited company, organized and existing under the laws of St. Kitts-Nevis and the successor in interest to Charly Records, Ltd and other "Charly" related entities; and claims to have rights to the Warner Brothers Sound Recordings pursuant to a license from Nene Montes and/or Tercer Mundo.

18.     Upon information and belief, licensemusic.com ApS is a private company organized and existing under the laws of Denmark and licenses the Warner Brothers Sound Recordings to third parties under a license from Charly Acquisitions.

19.     Upon information and belief, Ace Records, Ltd is a private limited company, organized and existing under the laws of the United Kingdom and is a record label, distributor and a licensee of both Westbound Records, Inc. and licensemusic.com ApS.

20.     Upon information and belief, Artistry Music, Ltd is a private limited company, organized and existing under the laws of the United Kingdom and is a record label and licensee of licensemusic.com ApS.

21.     Upon information and belief, Snapper Music, Ltd is a private limited company, organized and existing under the laws of the United Kingdom and is a distributor for Artistry Music.

22.     Upon information and belief, Atom Records, Ltd is a private company, organized and existing under the laws of Ireland and is a record label, distributor, and licensee of licensemusic.com ApS.

23.     Upon information and belief, Union Square Music, Ltd is a private limited company, organized and existing under the laws of the United Kingdom.  It owns the record label Metro Select and is a licensee of licensemusic.com ApS.

24.     Upon information and belief, X5 Music Group is a private company headquartered in Stockholm, Sweden, with an office in New York City, New York and is the business of selling, marketing and distributing digital music downloads as "MP3 albums."

25.     Upon information and belief, Sync2Picture, LLC is a limited liability company, organized and existing under the laws of the State of Michigan and administers the Westbound Sound Recordings in partnership with Westbound, and

further markets sync licenses for Westbound Sound Recordings and imitation Warner Brothers Sound Recordings.

## GENERAL ALLEGATIONS

**Westbound Sound Recordings**

26.     In 1966, Clinton has his first top ten hit, "(I Just Wanna) Testify" with his doo-wop band, The Parliaments, on Revilot Records, and at that time, Clinton became associated with Armen Boladian, ("Boladian"), a record distributor in Detroit, Michigan, who began distributing The Parliaments' records.

27.     In 1968, recognizing a new heavy guitar influenced style of rock made popular by fellow artist Jimi Hendrix, Clinton creates Funkadelic. In 1969, Clinton, approaches Boladian to distribute his newly produced single "Music for My Mother."

28.     Boladian agreed to release the single "Music For My Mother," and Clinton and Boladian entered into a business relationship where Boladian would release Funkadelic albums on a newly created label Westbound Records. Clinton and Boladian verbally agreed to split the masters and publishing equally.

29.     In 1970, Funkadelic's self-entitled album, "Funkadelic," was released on Westbound and contained the following tracks: Mommy, What's a Funkadelic?; I Bet You; Music For My Mother; I Got a Thing, You Got a Thing, Everybody's Got a Thing; Good Old Music; Qualify and Satisfy; and What is Soul.

30.     In 1971, Funkadelic's second album, "Free Your Mind and Your Ass Will Follow," was released on Westbound and contained the following tracks: Free Your Mind and Your Ass Will Follow ; Friday Night, August 14th; Funky Dollar Bill; I Wanna Know If It's Good to You; Some More; and Eulogy and Light.

31.     On August 31, 1971, Clinton, on behalf of his publishing company, Malbiz Music, Inc., and Boladian, on behalf of his publishing company, Bridgeport Music, Inc., memorialized their agreement regarding split publishing, but did not memorialize their agreement regarding the Westbound Sound Recordings.

32.     In the end of 1971, Funkadelic's third album, "Maggot Brain," was released on Westbound and contained the following tracks: Maggot Brain; Can You Get To That; Hit It And Quit It; You And Your Folks, Me And My Folks; Super Stupid; Back In Our Minds; and Wars Of Armageddon.

33.     In 1972, Funkadelic's fourth album, "America Eats Its Young," was released on Westbound and contained the following tracks: America Eats Its Young; You Hit the Nail On the Head; If You Don't Like the Effects, Don't Produce the Cause; Everybody Is Going To Make It This Time; A Joyful Process; We Hurt Too; Loose Booty; Philmore; Pussy; America Eats Its Young; Biological Speculation; That Was My Girl; Balance; Miss Lucifer's Love; and Wake Up.

34.     In 1973, Funkadelic's fifth album, "Cosmic Slop," was released on Westbound and contained the following tracks: Nappy Dugout; You Can't Miss

What You Can't Measure; March to the Witch's Castle; Let's Make It Last; Cosmic Slop; No Compute; This Broken Heart; Trash A-Go-Go; and Can't Stand the Strain.

35.     In 1974, Funkadelic's sixth album, "Standing on the Verge of Getting it On," was released on Westbound and contained the following tracks: Red Hot Mama; Alice In My Fantasies; I'll Stay; Sexy Ways; Standing On The Verge Of Getting It On; Jimmy's Got A Little Bit Of Bitch In Him; and Good Thoughts, Bad Thoughts.

36.     In 1975, Funkadelic's seventh album, "Let's Take it to the Stage," was released on Westbound and contained the following tracks: Good To Your Earhole; Better By The Pound; Be My Beach; No Head No Backstage Pass; Let's Take It To The Stage; Get Off Your Ass And Jam; Baby I Owe You Something Good; Stuffs And Things; The Song Is Familiar; and Atmosphere.

37.     In summer, 1975, Clinton was extremely unhappy with Boladian's lack of promotion of Funkadelic and further believed Boladian was improperly accounting to him, so he left Westbound after delivery of "Tales of Kidd Funkadelic."

38.     In 1976, Funkadelic's eighth album, "Tales of Kidd Funkadelic," was released on Westbound and contained the following tracks: Butt-to-Butt Resuscitation; Let's Take It to the People; Undisco Kidd; Take Your Dead Ass

Home! (Say Som'n Nasty); I'm Never Gonna Tell It; Tales of Kidd Funkadelic
(Opusdelite Years); and How Do Yeaw View You?

39.     In the past 40 years, the Westbound Sound Recordings have
consistently generated millions of dollars through direct sales and sampling by
other artists, yet Westbound has never properly accounted or paid Clinton
royalties.

**Westbound Later Claims Ownership of Westbound Sound Recordings**

40.     In February, 1992, Westbound, through its attorney, Elizabeth
McNicoll, registers the 1972 Funkadelic album "America Eats Its Young" and the
1976 Funkadelic album "Tales of Kidd Funkadelic" SR copyrights with the
copyright office under a "work for hire" claim, although there is work for hire
agreement regarding these sound recordings.

41.     In April, 1992, Westbound, through its agent, Jane Peterer, registers
the 1975 Funkadelic album "Funkadelic: Let's Take It to the Stage" SR copyright
with the copyright office under a "work for hire" claim, although there is no work
for hire agreement regarding these sound recordings.

42.     In February, 2002, Westbound, through its agent, Jane Peterer,
registers Funkadelic 1973 album "Cosmic Slop" and the 1974 album "Standing on
the Verge of Getting It On" SR copyright with the copyright office under a "work

for hire" claim, although there is no valid work for hire agreement regarding these sound recordings.

**Westbound Funkadelic Releases since 2007**

43. Upon information and belief, since 2007, all of the Westbound Sound Recordings, and additional bonus tracks, have been re-released, sold, licensed and otherwise exploited for commercial gain, and Westbound has not once provided an accounting to Clinton for the monies made on exploitation of these sound recordings.

44. In November, 2008, Westbound released the album "Toys," containing previously unreleased Funkadelic sound recordings from the early 1970s produced by George Clinton and a 1973 video clip of the song "Cosmic Slop," and Westbound has not once provided an accounting to Clinton for the monies made on exploitation of these sound recordings or video footage.

**Warner Brothers Sound Recordings**

**Chain of Title Ownership to Clinton**

45. On July 11, 1975, Clinton negotiates a recording agreement through his production company, Thang, Inc., with Warner Brothers Records to release Funkadelic albums. Pursuant to this agreement, Warner Brothers owns the Warner Brother Sound Recordings.

46.    Between 1976-1981, Warner Brothers releases the albums "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "Electric Spanking of War Babies," which albums contain the following valuable tracks: "(Not Just) Knee Deep," "One Nation Under a Groove," and "Coming Round the Mountain."

47.    In May, 1981, Warner Brothers tortiously interfered with economic relationships with Clinton's newly created company, Uncle Jam Records, and on August 18, 1982, Warner Brothers enters into a Settlement Agreement with Clinton that provides Warner Brothers will relinquish to Clinton its ownership and control of the Warner Brother Sound Recordings upon completion of certain conditions.

48.    In 2003, Nene Montes ("Montes") files *Montes v. Kaplan, et al.*, Case No. 03 CV 8955, C.D. California, against individuals who, in truth, were in collusion with him in an improper scheme to claim ownership of the Warner Brothers Sound Recordings.  The Defendants counter-claimed against Montes, and cross-claimed Clinton and Charly Acquisitions' predecessor, Charly Records, to determine ownership of the Warner Brothers Sound Recordings.  Clinton filed his own independent claims against the Defendants asserting his ownership of the Warner Brothers Sound Recordings.

49.     Montes thereafter defaulted from the *Montes v. Kaplan, et al* lawsuit, and Charly Records was dismissed for failure to be properly served.  Clinton prosecuted his claim of ownership to a bench trial in June, 2005 before Honorable Manuel L. Real.

50.     On or about June 17, 2005, the Honorable Manuel L. Real, United States District Court Judge for the Central District of California entered an Order and Judgment ("2005 Order") in *Montes v. Kaplan, et al.*, Case No, 03 CV 8955 (MCx), declaring Clinton to be the sole owner of the Warner Brothers Sound Recordings, and further declared Clinton has been the sole owner of the Warner Brothers Sound Recordings since 1993.  The Order further decreed that any grants of rights in the masters since 1993 by anyone other than George Clinton are invalid and shall not be honored.

51.     On June 20, 2005, Honorable Manuel Real entered the Conclusions of Law, which specifically provided:

a.  Tercer Mundo acquired no rights in the Warner Brothers Sound Recordings pursuant to the alleged December 11, 1981 assignments, which Clinton did not sign.

b.  Clinton did not assign or license his rights in the Warner Brothers Sound Recordings to Montes, Tercer Mundo or anyone else.

c. As a result of compliance with the terms of the settlement agreement between Clinton and Warner Brothers, Clinton acquired ownership of the Warner Brothers Sound Recordings in 1993.

d. Neither Tercer Mundo nor Montes had any rights in the Warner Brothers Sound Recordings to assign or license to anyone from 1981 to the present.

52.     The 2005 Order was recorded in the United Sates Copyright Office on May 15, 2006, document number V3539D214.  That Order was again recorded to the United States Copyright Office on September 13, 2006, document number V3542D883.

53.     Clinton has never licensed, nor authorized any other person or entity to license the Warner Brothers Sound Recordings, or any tracks contained therein, to any of the named defendants in this action.

**Charly Acquisitions willfully infringing the Warner Brothers Funkadelic recordings since summer, 2007**

Direct Communications between Clinton and Charly

54.     In February, 2007, Clinton discovered Charly Records (now Charly Acquisitions) ("Charly") was selling, licensing, and/or otherwise exploiting the Warner Brothers Sound Recordings for commercial gain under a license by Montes personally, and doing business as Tercer Mundo.

55. In June, 2007, Clinton had his attorney send Charly actual notice of the 2005 Order and requested an accounting and payment for exploitation of the Warner Brothers Sound Recordings.

56. In July, 2007, Charly, through its attorney, Paul Lambeth, sent a reply letter to Clinton's attorney, acknowledging it had provided Montes a $400,000 advance to exploit the Warner Brothers Sound Recordings, and if Clinton will waive everything in the past, grant Charly a license on Charly's terms, it will give Clinton a $200,000 advance.

57. Clinton rejected the proposal, insisting on an accounting for past exploitation before being able to consider granting Charly a license for further exploitation, and communications went silent.

58. In February, 2010, Clinton discovers Charly is still continuing to sell, license or otherwise exploit the Warner Brothers Sound Recordings for commercial gain and again sends a letter through his attorney to Charly to enforce Clinton's rights under the 2005 Order; and in March, 2010, Charly, through its attorney, Paul Lambeth, refused to recognize the 2005 Order or to account to Clinton for past exploitation, but offered to negotiate a deal with Clinton going forward.

59. Clinton rejected this proposal, insisting on an accounting for past exploitation, and has continued to press Charly, as of the date of this Complaint,

Charly has refused to account for past exploitation, refused to stop continuing its current exploitation of the Warner Brother Sound Recordings, or offer Clinton a satisfactory proposal concerning the exploitation of the Warner Brothers Sound Recordings.

Infringing Albums based on Licenses by Montes/Charly

60.    Upon information and belief, Charly licensed its purported rights to the Warner Brothers Sound Recordings from Montes, and thereafter granted licensemusic.com ApS an exclusive license, and licensemusic.com ApS has then entered into license agreements with various third parties to exploit the recordings, despite actual notice of the 2005 Order.

61.    In September, 2008, Artistry Music, Ltd, re-released the Warner Brothers Sound Recordings, which were distributed and marketed by Snapper Music Ltd, under a license from licensemusic.com ApS. These albums bear the original albums' artwork, which includes the Funkadelic trademark, and the name, likeness and image of Clinton, despite actual notice of the 2005 Order.

62.    In January, 2009, Artistry Music, Ltd re-released the compilation album, "The Best of Funkadelic 1976-1971," which was distributed and marketed by Snapper Music, containing Warner Brothers Sound Recordings under license from licensemusic.com ApS, despite actual notice of the 2005 Order.  This album prominently bears the Funkadelic Trademark, the Charly Trademark, and the liner

notes contain images of the artwork for the original four Funkadelic Warner

Brothers albums, which also includes the name, likeness and image of Clinton.

63.    In November, 2009, Westbound, in conjunction with Ace Records,

released the Funkadelic compilation album "Standing on the Verge of Getting It

On: The Best of Funkadelic," which contains both Westbound Sound Recordings

and the Warner Brothers Sound Recordings "(Not Just) Knee Deep," "One Nation

Under and Groove," and "Coming Round the Mountain" under a license from

licensemusic.com ApS.  This album includes in the liner notes the original artwork

from the album "One Nation Under a Groove" as well as the Funkadelic

trademark, despite actual notice of the 2005 Order.  This album also includes the

name, likeness and image of Clinton in the liner notes.

64.    Upon information and belief, Armen Boladian, Westbound, and Ace

Records also had full knowledge of the 2005 Order and Clinton's ownership of the

Warner Brothers Sound Recordings, at least by 2008 when Joel Martin approached

Clinton to obtain permission to administer the Warner Brothers Sound Recordings;

and that Charly Acquisitions, licensemusic.com ApS, and/or Nene Montes/Tercer

Mundo had no rights to license the Warner Brothers Sound Recordings for

exploitation on this Westbound trademarked album.

65.    In July, 2011, Union Square Music, under its label Metro Select

Records re-released the Funkadelic compilation album "You Got the Funk, We

Got the Funk" containing all Warner Brothers Sound Recordings, under a license from licensemusic.com ApS, despite actual notice of the 2005 Order. This album bears the name, likeness and image of Clinton and his act Funkadelic, as well as the Funkadelic trademark. This album also includes a bonus poster of a picture of Clinton and the Funkadelic members and prominently displays the Funkadelic trademark on the poster.

66.    In October, 2011, Atom Records re-released the Funkadelic compilation album "Cosmic Funkers" containing all Warner Brothers Sound Recordings, under license from licensemusic.com ApS, despite actual notice of the 2005 Order. This album bears the name, likeness and image of Clinton and his act Funkadelic, as well as the Funkadelic trademark.

Essential Soul Anthems

67.    In June, 2011, X5 Music Group released for sale as a permanent download the compilation mp3 album entitled "Essential Soul Anthems" which contains as Track 11 the Clinton owned Warner Brother Sound Recording "One Nation Under a Groove."

68.    Since June, 2011, Amazon.com, iTunes and Rhapsody, online digital download providers, have been selling this mp3 album as a permanent download, and have also been selling the Warner Brothers Sound Recording "One Nation Under a Groove" as a single track from that album.

69.     Clinton did not license "One Nation Under a Groove" to be included in this album, nor authorized anyone to license this recording to X5 Music Group.

**Sync2Picture unfair competition, deceptive trade practices & violation of Cal Code §3344 with "imitation" recording of the original sound recording Knee Deep**

70.     In 2008, Joel Martin attempted to negotiate a business relationship with Clinton to exploit the Warner Brothers Sound Recordings.  Clinton refused to consider any business venture with Joel Martin, due to among other things, the fact that Martin is Boladian's business partner.

71.     Upon information and belief, in March, 2010, Joel Martin organized Sync2Picture as a Michigan limited liability company, for the primary purpose of exploiting sound recordings Clinton and his act Funkadelic, and for a limited number of other artists, without Clinton's knowledge or authorization.

72.     Upon information and belief, in June, 2011, Sync2Picture registered the SRu copyright for "(Not Just) Knee Deep," the most sampled and sync licensed song in the Warner Brothers Sound Recording catalogue, which is not just a "cover song" of the original, but an "imitation" of the original.

73.     Upon information and belief, Sync2Picture is attempting to market this imitation version of "(Not Just) Knee Deep" as the original Warner Brothers Sound Recording, and further misrepresents that it owns the original sound recording to potential licensees.

74.     Sync2Picture's website, www.sync2picture.com further misleads the general public in that it has the rights to license Funkadelic recordings owned by Clinton and uses Clinton's name, likeness and/or image to promote the false and misleading imitation sound recording.

75.     Sync2Picture's false and misleading representations and use of the imitation recording confuses the public and dilutes the value of Clinton's rights of publicity and "(Not Just) Knee Deep's" marketability for licensing from Clinton.

**Liability of Each Defendant and Damages to Plaintiff**

76.     Despite the absence of an agreement from Plaintiff for use of the Westbound Sound Recordings and the Warner Brothers Sound Recordings, all of the named defendants utilized these masters, authorized others to use the sound recordings, or created and utilized imitation sound recordings.  Despite the absence of an agreement from Plaintiff, the defendants produced, manufactured, distributed and sold (or authorized others to do so) sound recordings containing the Westbound Sound Recordings and the Warner Brothers Sound Recordings, without accounting to or paying any royalties to Plaintiff.  The defendants kept sales proceeds for themselves as the putative copyright owners of the new Infringing Sound Recordings.  The defendants egregiously, and with the knowledge of, and/or had reason to know of, the infringing activity, induced, caused and/or materially contributed to, and substantially participated in, the

infringing activity when they made such releases and took such action.  Further, the defendants had the obligation, right and ability to supervise such infringing activity but allowed the infringement to occur, and they had an obvious and direct financial interest in exploiting the copyrighted materials as set forth herein.

77.    Despite non-stop exploitation and sales of the Westbound Sound Recordings for over forty years, Plaintiff has not received proper compensation in the form of royalties, or any accounting whatsoever from Westbound.

78.    Defendants' conduct, including infringement, has been and continues to be willful and knowing and, where applicable, grossly negligent.  Defendants acted with utter disregard for the rights of Plaintiff, and acted with such a want of care as would raise a presumption of conscious indifference to consequences.  In the alternative, defendants' conduct, even if not willful and knowing, constitutes infringement of Plaintiff's copyright.

79.    As a direct and proximate result of defendants' conduct, Plaintiff has suffered actual damages including lost profits, lost opportunities, loss of goodwill, attorneys' fees and interest, and in the alternative, is entitled to statutory damages as allowed by law.

80.    On information and belief, the Infringing Sound Recordings have been released or re-released on different records and/or made available for download.  Although not all such re-releases are identified in this Complaint, each

time an Infringing Sound Recording has been re-released, the defendants are liable for separate acts of infringement, which were and are willful, and therefore, entitle Plaintiff to statutory damages of One Hundred Fifty Thousand Dollars ($150,000) per infringement to the extent that the profits from each infringement are less than $150,000. In the event the defendants' profits exceed $150,000 per infringement, Plaintiff is entitled to those profits.

## COUNT I
### Declaratory and Injunctive Relief
### 28 U.S.C. § 2201
### (Against All Defendants)

81.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

82.   This is a claim for declaratory and injunctive relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

83.   An actual controversy has arisen as between Plaintiff and Defendants. Plaintiff asserts that he, and *not* Defendants, is the owner of all rights relating to the copyright interests and/or renewal term copyrights in and to musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, and that Plaintiff, and *not* Defendants, has the exclusive rights conferred upon copyright owners under both the applicable 1909 and 1978 versions of the  U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.* as to the musical works and sound recordings prepared, created, and incorporating the

performances of Plaintiff, such that Defendants have no past and/or present right(s) to exploit the musical works and sound recordings embodied in the Westbound Sound Recordings and the Warner Brothers Sound Recordings.

84.   Alternatively, Defendants, by their actions and representations made in interstate and/or international commerce effecting the United States, contend or otherwise assert that they have some interest or other color of authority to make, produce, and sell copies of, or have some rights to the copyrights in and to the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings and/or have not otherwise responded to Plaintiff's multiple requests for information and an accounting.

85.   A judicial declaration is necessary to determine the rights and obligations of the parties.

86.   As a result, Plaintiff seeks a declaratory judgment (a) that he has an ownership interest of the copyright interests and/or renewal term copyrights in and to the musical works in the Westbound Sound Recordings and the Warner Brothers Sound Recordings, exclusive of the Defendants; (b) that Plaintiff has the rights conferred upon copyright owners under the U.S. Copyright Act in and to the musical works and sound recordings embodied in the Westbound Sound Recordings and the Warner Brothers Sound Recordings, including, without limitation, the right to exploit the musical works and sound recordings in the

Westbound Sound Recordings and the Warner Brothers Sound Recordings; (c) that Defendants have no interest in the copyrights and/or renewal term copyrights in and to the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings, or any right to exploit the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings; and (d) that any further action by Defendants in derogation of the rights of Plaintiff constitutes willful copyright infringement.

87.   Plaintiff further seeks injunctive relief requiring (a) that Defendants disgorge all benefits, monetary and non-monetary, collected by Defendants as the purported copyright owner(s), licensee(s), and/or user(s) of the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings; (b) that Defendants re-convey any copyright interests and/or renewal term copyrights in and to the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings to Plaintiff to the extent necessary to effectuate Plaintiffs' rights; and (c) that Defendants prepare, file, and record any and all necessary FORM CA correction filings with the U.S. Copyright Office as required to correct and clarify all prior copyright filings, if any, submitted by any of the Defendants before the U.S. Copyright Office.

## COUNT II
### Federal Copyright Infringement Under 17 U.S.C. §501
### (Against All Defendants)

88.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

89.     This is a claim for federal copyright infringement under the United States Copyright Act, 17 U.S.C. § 101 *et seq.*

90.     Plaintiff is the owner of all right, title, and interest in and to the copyright interests and/or renewal term copyrights for the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings and has been the owner of such rights since the applicable and corresponding dates for musical work and sound recording previously identified in preceding paragraphs.

91.     Without consent, authorization, approval, or license from the Plaintiff, Defendants knowingly, willingly, and unlawfully exploited, and continue to exploit, the copyright interests and/or renewal term copyrights in and to the musical works and sound recordings in the Westbound Sound Recordings and the Warner Brothers Sound Recordings, including by (a) administering and/or selling the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings either themselves and/or with third parties, (b) licensing and/or utilizing the musical works and sound

recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings for use by third parties such as record companies and/or releasing new musical works and compilations encompassing one or more of the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, and (c) collecting royalties and other revenues from such activities recited above.

92.     By virtue of Defendants' actions in involving the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings described above, Defendants have directly infringed and/or induced, caused, and materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to use, copy, distribute, publicly perform, prepare derivative works based upon, and otherwise commercially exploit the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings.

93.     Defendants' acts of direct and/or inducement of infringement are and have been knowing and willful.

94.     Defendants' direct, contributory and/or induced infringement have interfered with the Plaintiff's ability to (a) administer and/or utilize the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, (b) license and/or commercially exploit the

musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings with third parties, and (c) collect royalties and other revenues from such activities and endeavors and/or otherwise fully enjoy the rights afforded to the Plaintiff under the U.S. Copyright Act.

95.    By this unlawful exploitation of the copyright interests and/or renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, Defendants have violated one or more of the Plaintiff's exclusive rights under 17 U.S.C. § 106.

96.    Defendants have realized unjust profits, gains, and advantages as a proximate result of their infringing and/or unauthorized acts.

97.    Defendants will continue to realize unjust profits, gains, and advantages as a proximate result of their infringement as long as such infringement is permitted to continue.

98.    Plaintiff is entitled to seek, at his election, either actual damages or statutory damages as set forth in the U.S. Copyright Act, 17 U.S.C. § 101 *et seq.*

99.    Plaintiff is also entitled to an injunction restraining Defendants from engaging any further such acts in violations of the United States copyright laws. Unless Defendants are enjoined and prohibited from infringing Plaintiff's copyright interests in and to the musical works and sound recordings comprising

the Westbound Sound Recordings and the Warner Brothers Sound Recordings, and unless all infringing products and advertising materials are seized, Defendants will continue to intentionally infringe, induce, and/or contributory infringe the Plaintiffs' copyright interests and/or renewal term copyrights.

100.   As a direct and proximate result of Defendants' direct and indirect willful copyright infringement, Plaintiff has suffered, and will continue to suffer, monetary loss, damage, and diminution of his rights under the U.S. Copyright Act and under the statutory and common law of the State of California.   Plaintiff is entitled to recover from Defendants, in amounts to be determined at trial, the damages sustained and will sustain, and any gains, profits, and advantages obtained by Defendants as a result of Defendants' acts of infringement and Defendants' exploitation of the copyright interests and/or renewal term copyrights in and the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, which may include an election of statutory damages as set forth in the U.S. Copyright Act, 17 U.S.C. §101 *et seq.*

# COUNT III
## Unauthorized Use and Exploitation Of
## Pre-February 15, 1972 Sound Recordings
## (Cal. Civil Code § 980 *et seq.*)
## (Against Boladian, Westbound Records, Ace Records, and Sync2Picture)

101.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

102.   This is a claim for copyright infringement under state common law and Cal Civil Code § 980 *et seq.* which comprise non-preempted state law claims under 17 U.S.C. § 301(c).

103.   Each of the musical works and sound recordings comprising the Westbound Sound Recordings also comprise and embody fixed sound recordings of the musical performances of Clinton, for the corresponding musical work and certain of the musical works and sound records comprising the Westbound Sound Recordings also comprise pre-February 15, 1972 sound recordings of fixed performances prior to February 15, 1972 within the meaning of 17 U.S.C. § 301(c).

104.   Without consent, authorization, approval, or license from Plaintiff, Defendants knowingly, willingly, and unlawfully exploited the sound recordings pertaining to the pre-February 15, 1972 musical works and sound recordings comprising the Westbound Sound Recordings.

105. Defendants have acted directly or otherwise induced, caused, and/or materially contributed to the infringing acts of others by encouraging, inducing, allowing, and assisting others to use, copy, distribute, publicly perform, prepare derivative works based upon, and otherwise commercially exploit the pre-1972 sound recordings pertaining to the musical works and sound recordings comprising the Westbound Sound Recordings.

106. Defendants have realized unjust profits, gains, and advantages as a proximate result of their infringements and takings.

107. Defendants will continue to realize unjust profits, gains, and advantages as a proximate result of their infringements and takings as long as such acts are permitted to continue.

108. The acts of the Defendants are causing irreparable injury to the Plaintiff. Plaintiff has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT IV
### Rescission of 1969 Agreement
### (Cal. Civil Code § 1689)
### (Against Boladian and Westbound Records, Inc.)

109. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

110. This is a claim for rescission of contract under Cal. Civil Code § 1689 and state common law.

111.   In 1969, Clinton and Boladian entered into an oral agreement whereby Clinton agreed to provide Funkadelic masters to Boladian to be released on a newly created label called Westbound Records in exchange for 50% revenue from the exploitation of those sound recordings.

112.   In 1969, Boladian, with intent to deceive Clinton and to induce Clinton to enter into this agreement, misrepresented that he would account and compensate Clinton for his contribution to Westbound.  Clinton reasonably relied on Boladian's misrepresentations.

113.   Under the terms of the agreement, Clinton has fully performed, providing Boladian with eight studio albums and additional previously unreleased tracks.

114.   In over the past four years, Boladian and his company, Westbound, has re-released, licensed, and otherwise exploited the Westbound Sound Recordings, but has not provided Clinton with a single accounting statement or payment.

115.   As a proximate result of the breach of the 1969 Agreement by Defendants Boladian and Westbound, as herein alleged, Plaintiff has been damaged in an amount to be proven at time of trial.

116.   Clinton intends service of summons of this complaint to serve as notice of rescission of the aforementioned contract, and hereby offers to restore all

consideration furnished by Boladian and Westbound under said contract, on condition that Boladian and Westbound restore to Clinton the consideration furnished by Clinton.

### COUNT V
### Fraud
### (Against All Defendants)

117.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

118.   This is a claim for fraud under state common law.

119.   Defendants made material representations to various third parties, including the U.S. Copyright Office, Broadcast Music, Inc. ("BMI"), The Harry Fox Agency ("HFA"), as well as the public on product markings and literature, that Defendants were the owner, licensee, and/or had other legal rights to disseminate copies or utilize the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings.

120.   Defendants' actions and representations in commerce and on goods and services relating to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings constituted a publication of false statements knowing the statements are false or acting in reckless disregard for its truth or falsity.

121.   Defendants made the representations and took the foregoing actions with the intention that it would be relied upon by the public, the Plaintiff as well as various third parties, including the U.S. Copyright Office, BMI, HFA, and record companies.

122.   Plaintiff, as well as various third parties, including at least the U.S. Copyright Office, BMI, HFA, and record companies, have relied on Defendants' foregoing actions and representations and, as a result, Plaintiff has been injured.

123.   The acts of the Defendants are causing irreparable injury to the Plaintiff.   Plaintiff has no adequate remedy at law and said acts will continue unless restrained by this Court.

### COUNT VI
### Injurious Falsehood
### (Against All Defendants)

124.   Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

125.   This is a claim for injurious falsehood under state common law.

126.   Defendants' actions and representations in commerce relating to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, including in public filings before at least the U.S. Copyright Office, BMI, and HFA, constituted a publication of a false

statement(s) knowing that statement to be false or acting in reckless disregard for its truth or falsity.

127.   Defendants knew, or should have known, that the false publications, actions, and representations set forth in the preceding paragraphs would likely result in pecuniary loss and/or harm to the interests of the Plaintiff having a pecuniary value, by conveying and circulating the false and misleading impression that the Defendants possess or retain some legal rights or interests in the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, or that third parties would need to contract with the Defendants to obtain rights therein to the exclusion of the Plaintiff.

128.   Plaintiff has suffered special damages and lost opportunities as a result of the actions and conduct by Defendants.

129.   By virtue of the facts herein averred, the acts of the Defendants constitute injurious falsehood within the meaning of the common law of the State of California as they pertain to the unlawful use and dominion over the Plaintiff's rights in at least the copyright interests and renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings.

130.   Defendants' unlawful and unauthorized use and dominion over the Plaintiff's rights in and to the musical works and sound recordings comprising the

Westbound Sound Recordings and the Warner Brothers Sound Recordings have been deliberate and willful and committed with the intent to cause confusion and mistake, and to deceive and defraud the public into believing that the Defendants somehow possess legal rights which are superior to that of the Plaintiff.

131.  Defendants have and/or will obtain substantial benefit from the use of, and dominion over, the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings without Plaintiff's permission, consent, and/or authorization.

132.  Plaintiff has not received appropriate compensation for the Defendants' use and dominion over at least the the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings.

133.        Defendants' actions and representations in commerce have caused, or will likely cause, a benefit to the Defendants at the expense of the Plaintiff in that such statements and representations to third parties convey the false and misleading impression that the Defendants possess some legal rights or interests in the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings which are superior to that of Plaintiff.

134.   The acts of the Defendants are causing irreparable injury to the Plaintiff.   Plaintiff has no adequate remedy at law and said acts will continue unless restrained by this Court.

## COUNT VII
### Federal Trademark Counterfeiting, 15 U.S.C. § 1114
### (Against Charly, Snapper, Union Square, Artisty Music, Atom Records)

135.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

136.   This is a claim for Federal Trademark Counterfeiting, under 15 U.S.C. § 1114.

137.   Defendants have used spurious designations that are identical with, or substantially indistinguishable from, the Funkadelic Trademarks on goods they offer for sale and commercial exploitation.

138.   Defendants have used these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, sale, offering for sale and distribution of goods.

139.   Defendants' use of the Funkadelic Trademarks to advertise, promote, offer for sale, distribute, and sell defendants' infringing albums was and is without the consent of Clinton.

140.   Defendants' unauthorized use of the Funkadelic Trademarks on and in connection with Defendants' advertisement, promotion, sale, offering for sale and

distribution of infringing albums through the world wide web and at retail constitute defendants' unauthorized use of the Funkadelic trademarks in commerce.

141. Defendants' unauthorized use of the Funkadelic Trademarks as set forth above is likely to: (a) cause confusion, mistake and deception;  (b) cause the public to believe that defendants are authorized, sponsored or approved by Clinton or that defendants are affiliated, connected or associated with or in some way related to Clinton; and (c) result in defendants unfairly benefitting from Clinton's advertising and promotion and profiting from the reputation of Clinton and his Funkadelic Trademarks all to the substantial and irreparable injury of the public, Clinton and Plaintiff's Funkadelic Trademarks and the substantial goodwill represented thereby.

142. Defendants' acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

143. Defendants' acts are both willful and malicious.

144. By reason of the foregoing, defendants are liable to Clinton for:  (a) statutory damages in the amount of up to $1,000,000 for each mark counterfeited as provided by 15 U.S.C. § 1117(c) of the Lanham Act or, at Clinton's election, an amount representing three (3) times Clinton's damage or Defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117(b).

**COUNT VIII**
**Federal Trademark Infringement, 15 U.S.C. § 1114**
**(Against Charly, Snapper, Union Square, Artistry Music, and Atom)**

145.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

146.   This is a claim for federal trademark infringement under 15 U.S.C. § 1114.

147.   Based on Clinton's extensive advertising under the Funkadelic Trademark, its extensive sales and world wide popularity of Funkadelic music, the Funkadelic Trademarks have acquired a secondary meaning so that any product and advertisement bearing such trademarks is immediately associated by purchasers and the public as being a product and affiliate of Clinton.

148.   Defendants' activities constitute use in commerce of the Funkadelic trademarks.   Defendants' use of the Funkadelic Trademarks in connection with Defendants' sale, offers of sale, distribution, promotion, and advertisement of their goods constitutes infringement of the Funkadelic Trademarks.

149.   Defendants have used the Funkadelic Trademarks, knowing they are the exclusive property of Clinton, in connection with defendants' sale, offers for sale, distribution, promotion and advertisement of their goods.

150.   Defendants' activities create the false and misleading impression that defendants are sanctioned, assigned or authorized by Clinton to use the Funkadelic

Trademarks to advertise, manufacture, distribute, offer for sale or sell albums containing infringing sound recordings when defendants are not so authorized.

151.   Defendants engage in the aforementioned activity with the intent to confuse and deceive the public into believing that Defendants and the albums they sell are in some way sponsored, affiliated, or associated with Clinton, when in fact they are not.

152.   Defendant's use of the Funkadelic Trademark has been without the consent of Clinton, is likely to cause confusion and mistake in the minds of the public and, in particular, tends to and does falsely create the impression that the goods advertised, promoted, distributed and sold by defendants are warranted, authorized, sponsored or approved by Clinton when, in fact, they are not.

153.   Defendants' unauthorized use of the Funkadelic Trademarks has resulted in Defendants unfairly benefiting from Clinton's advertising and promotion, and profiting from the reputation of Clinton and the Funkadelic Trademarks, to the substantial and irreparable injury of the public, Clinton and the Funkadelic Trademarks, and the substantial goodwill represented thereby.

154.   Defendants' acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

155.   By reason of the foregoing, defendants are liable to Clinton for: (a) an amount representing three (3) times Clinton's damage or Defendants' illicit profits;

1   and (b) reasonable attorney's fees, investigative fees and pre-judgment interest

2   pursuant to 15 U.S.C. § 1117.

3

4                                          **COUNT IX**
                **Federal False Designation of Origin and Unfair Competition**
5                                    **15 U.S.C. § 1125(a)**
                        **(Against All Defendants except Sync2Picture)**
6

7       156.   Plaintiff repeats and realleges the allegations set forth in the preceding

8
    paragraphs as if fully set forth herein.
9

10      157.   This is a claim for federal false designation of origin and unfair

11
    competition under 15 U.S.C. § 1125(a).
12

13      158.   In connection with defendants' advertisement, promotion, distribution,

14
    sales and offers of sales of their goods, defendants have used in commerce, and
15

16   continues to use in commerce, the Funkadelic Trademarks.

17      159.   In connection with defendants' advertisement, promotion, distribution,

18
    sales and offers of sales of their goods, defendants have affixed, applied and used false
19

20   designations of origin and false and misleading descriptions and representations,

21   including the Funkadelic Trademarks, which tend to falsely describe the origin,

22
    sponsorship, association or approval by Clinton of the goods defendants sell.
23

24      160.   Defendants have used one or more of the Funkadelic Trademarks with

25
    full knowledge of the falsity of such designations of origin, descriptions and
26

27   representations, all to the detriment of Clinton.

28

---

161.   Defendants' use of the Funkadelic Trademarks on defendants' goods constitutes false descriptions and representations tending falsely to describe or represent defendants and defendants' products as being authorized, sponsored, affiliated or associated with Clinton.

162.   Defendants have used one or more of the Funkadelic Trademarks on goods with the express intent to cause confusion and mistake, to deceive and mislead the public, to trade upon the reputation of Clinton and to improperly appropriate to themselves the valuable trademark rights of Clinton.

163.   Defendants' acts constitute the use in commerce of false designations of origin and false or misleading descriptions or representations, tending to falsely or misleadingly describe or represent defendants' products as those of Clinton in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

164.   By reason of the foregoing, defendants are liable to Clinton for: (a) an amount representing three (3) times Clinton's damage or defendants' illicit profits; and (b) reasonable attorney's fees, investigative fees and pre-judgment interest pursuant to 15 U.S.C. § 1117.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COUNT X**
**False Designation of Origin/False Impression of Association**
**15 U.S.C. § 1125(2)**
**(Against Sync2Picture)**

165.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

166.   This is a claim for false designation of origin and false impression of association under 15 U.S.C. § 1125(a).

167.   Defendant has knowingly commercially misappropriated and used the name, image, and/or likeness of Clinton, as well as an "imitation" sound recording of Clinton owned sound recording "(Not Just) Knee Deep" to falsely advertise or represent that Defendant's business and products are associated, approved, endorsed by or otherwise connected with Clinton.  Defendant has further misled the public that the "imitation" recording of "(Not Just) Knee Deep" is the original sound recording owned by Clinton.  Clinton has on limited occasions licensed the use of his rights of publicity and sound recordings to advertise, promote and market third party's goods and services.  By virtue of advertising and sales, together with consumer goods endorsed by and affiliated with Clinton, Clinton's name, image, likeness and distinct music sound, have become and are valuable assets identified with and symbolizing Clinton.

168.   Defendant's commercial and public use and exploitation of Clinton's

name, likeness, image, and distinct music sound for the promotion, advertisement, and marketing of Defendant's business and products is a false designation of origin and a false or misleading representation of fact which is likely to cause confusion, mistake, and deceive the public as to an affiliation, connection or association between Defendant and Clinton, and is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval by Clinton of Defendant's business and products.

169.   Clinton is informed and believes and based thereon alleges that Defendant intended to, and did, confuse and mislead the public, and did represent and create the false impression that Defendant's business and products are endorsed, authorized, originated, sponsored, approved, or licensed by Clinton, or otherwise affiliated with Clinton.

170.   In fact, there is no affiliation, endorsement, or other relationship of any kind between Clinton and Defendant.  Clinton has not authorized, licensed or given permission to Defendant to use his name, image, likeness or distinct musical sound in any commercial or other manner whatsoever.  Defendant has therefore created and will continue to create a false impression concerning an association and affiliation between Clinton and Defendant, a false designation of the origin of Defendant's business and products, and confusion as to a connection between Clinton and Defendant and Clinton's purported endorsement and approval of

Defendant's products.

171.   As a direct and proximate result of the aforementioned acts, Clinton has suffered and continues to suffer damages in an amount to be proven at trial. When Clinton has ascertained the full amount of damages, he will seek leave of Court to amend this Complaint accordingly.

172.   Pursuant to 15 U.S.C. § 1116(a), Clinton is entitled to an order enjoining Defendant from using Clinton's name, image, likeness and distinct musical sound in connection with Defendant's business and products.

173.   Pursuant to 15 U.S. C. § 1117(a), Clinton is entitled to an Order requiring Defendant to account to Clinton for any and all profits derived by Defendant from the aforesaid wrongful conduct, and to an Order awarding all damages sustained by Clinton. Moreover, Defendant's acts make this an exceptional case under 15 U.S.C. § 1117(a), and Clinton is therefore entitled to recover his attorneys' fees and costs of this action.

174.   Clinton is informed and believes and based thereon alleges that Defendant's conduct is intentional and without foundation in law.  Pursuant to 15 U.S.C. § 1117(a), Clinton is entitled to an award of treble damages against Defendant.

## COUNT XI
### Unfair Competition and Unfair Business Practices
### Bus. & Prof. Code § 17200 Against All Defendants

175.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

176.   This is a claim for unfair competition and unfair business practices under Cal Bus & Prof. Code § 17200.

177.   Clinton is informed and believes and based thereon alleges that Defendants, by their acts and omissions alleged herein, have engaged in unlawful, unfair and fraudulent business practices as defined in Business and Professions Code Section 17200, and has utilized the unlawful and tortious means alleged herein to unjustly enrich themselves by, among other things, misappropriating, using and exploiting, without right, title or authority, the valuable copyrights, trademarks and publicity rights owned solely and exclusively by Clinton.

178.   The conduct of Defendants alleged herein violate Business and Professions Code section 17200 in the following respects: (a) Defendants' acts of misappropriation, as alleged herein, violate the common law trademark rights and right of publicity and consequently constitute an unlawful business act or practice within the meaning of the section; and (b) Defendants' unfair, misleading and deceptive use of Clinton's name, image, likeness, distinct musical sound, trademarks, artwork, photographs, as alleged herein has created confusion in the

public's mind, creating the false appearance of Clinton's endorsement of Defendants' businesses and products.

179.   The unlawful, unfair and fraudulent business practices alleged herein present a continuing threat to members of the public in that Defendants, if unpunished, are likely to continue to misappropriate the valuable rights of acclaimed celebrities for commercial profit and thus continue their practice of unlawful, unfair and fraudulent business practices.

180.   As a direct and proximate result of the acts alleged herein, Defendants received the benefit of the use of Clinton's rights, and continue to exploit Clinton's rights, which rights are exclusively held by him.

181.   As a direct and proximate result of the acts alleged herein, Clinton has suffered and continues to suffer damages in an amount to be proven at trial.  When Clinton has ascertained the full amount of damages, he will seek leave of Court to amend this Complaint accordingly.

## COUNT XII
### Violation of Cal Code § 3344
### (Against All Defendants)

182.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

183.   This is a claim for violation of rights to publicity under Cal Code § 3344.

184.   Through his hard work and use of his talents in the field of entertainment, Clinton's name, likeness and image are immediately recognizable by the public, and have become invested with substantial goodwill in the eyes of the public.  Accordingly, Clinton's right of publicity has substantial commercial value which he has not agreed to license or transfer to Defendants, in whole or in part, for any purpose whatsoever.

185.   Clinton has carefully developed and cultivated his image and persona, resulting in his worldwide recognition and the goodwill associated therewith. Defendants have, without right, title or authorization, misappropriated and commercially used Clinton's valuable publicity rights in and to his name, likeness and image, and the manifest success and popularity of Clinton, by illegally using them for commercial purposes, including the marketing, advertising, packaging and selling of Defendants' products.

186.   The conduct of Defendants as alleged herein constitute a violation of Section 3344 of the Civil Code due to the knowing and unauthorized use by Defendants of the name, image, likeness of Clinton for commercial use without authority or consent.

187.   As a direct and proximate result of Defendants' wrongful acts, Clinton has suffered substantial financial loss because he was not compensated for the value of Defendants' use of his name, likeness and image.  As a further direct and

proximate result of Defendants' alleged conduct herein, Clinton has suffered from the dilution of the value of his publicity rights, to his detriment and general damage.  As a further direct and proximate result of Defendants' conduct alleged herein, Clinton has suffered and continues to suffer damages in an amount to be proven at trial.  When Clinton has ascertained the full amount of damages, he will seek leave of Court to amend this Complaint accordingly.

188.   By reason of the aforesaid wrongful acts of Defendants, in addition to the relief set forth above, Clinton is entitled to a full accounting of all gross revenues and profits received, directly and indirectly, by Defendants as a result of the unauthorized use of Clinton's publicity rights and to an award of all such sums. By reason of Defendants' wrongful acts as alleged above, Defendants are involuntary trustees holding all such sums in their possession under a constructive trust for the benefit of Clinton, and with a duty to transfer all such sums to Clinton forthwith.

189.   As a further direct and proximate result of the aforesaid wrongful acts of Defendants, Clinton has incurred and will continue to incur substantial attorneys' fees and costs.  Clinton is entitled to an award of his attorneys' fees and costs incurred in connection with this action pursuant to Section 3344(a) of the California Civil Code.

190.   Clinton is informed and believes and based thereon alleges that

Defendants, in doing the things alleged herein, acted willfully, maliciously, oppressively and despicably, and with full knowledge of the adverse effect of their actions on Clinton and with willful and deliberate disregard for the consequences to Clinton. By reason thereof, Clinton is entitled to recover punitive and exemplary damages from Defendants in an amount sufficient to punish Defendants for their wrongful conduct, set and example and deter similar conduct.

191. There is a real threat that Defendants will continue to violate Clinton's right of publicity, in that Clinton has been unable to curtail Defendants' knowing misappropriation through extra-judicial communications and demands. Unless and until enjoined and restrained by order of this Court, Defendants' continued use of Clinton's name, likeness, and image will cause Clinton great and irreparable injury because Clinton will suffer lost profits and dilution of the value of his identity. Clinton also has no adequate remedy at law for the injuries being suffered because a judgment for money damages will not suffice to prevent Defendants' continued misappropriation of Clinton's publicity rights.

## COUNT XIII
### Common Law Right of Publicity
### (Against all Defendants)

192. Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

193. This is a claim for violation of rights of publicity under state common

law.

194.   Through his hard work and use of his talents in the field of entertainment, Clinton's name, likeness and image are immediately recognizable by the public, and have become invested with substantial goodwill in the eyes of the public.  Accordingly, Clinton's rights of publicity has substantial commercial value which he has not agreed to license or transfer to Defendants, in whole or in part, for any purpose whatsoever.

195.   Defendants have, without any right, title or authorization, misappropriated Clinton's valuable publicity rights in and to his name, image, and likeness by using his publicity rights for commercial purposes, including without limitation, marketing, advertising and selling Defendants' products, among other things.

196.   This misappropriation was for Defendants' pecuniary and commercial advantage, in that Clinton's name, image, likeness were exploited with the intention of creating and enhancing Defendants' public image and pecuniary gain and profit resulting from the advertisement, promotion and sale of Defendants' products.

197.   Clinton is informed and believes and thereon alleges that Defendants' advertising, promotion and sale of goods misappropriating Clinton's valuable publicity rights, as set forth hereinabove, has resulted in dilution of the value of the

aforesaid publicity rights to the detriment and damage of Clinton.  Defendants'
wrongful acts, as alleged herein, constitute a violation and misappropriation of
Clinton's right of publicity because Defendants misappropriated Clinton's name,
image and likeness for the commercial purpose of promoting Defendants'
products.

198.   As a direct and proximate result of Defendants' wrongful conduct
alleged herein, Clinton has suffered and continues to suffer damages in an amount
to be proven at trial.  When Clinton has ascertained the full amount of damages, he
will seek leave of Court to amend this Complaint accordingly.

199.   Clinton is informed and believes and based thereon alleges that
Defendants, in committing the acts alleged herein, acted willfully, maliciously,
oppressively and despicably, and with full knowledge of the adverse effect of their
actions on Clinton and with willful and deliberate disregard for the consequences
to Clinton.  By reason thereof, Clinton is entitled to recover punitive and
exemplary damages from Defendants in an amount sufficient to punish Defendants
for their wrongful conduct, set an example and deter similar conduct.

200.   There is a real threat that Defendants will continue to violate Clinton's
rights of publicity, in that Clinton has been unable to curtail Defendants' knowing
misappropriation through extra-judicial communications and demands.  Unless and
until enjoined and restrained by order of this Court, Defendants' continued use of

Clinton's name, likeness, and image will cause Clinton great and irreparable injury because Clinton will suffer lost profits and dilution of the value of his identity. Clinton also has no adequate remedy at law for the injuries being suffered because a judgment for money damages will not suffice to prevent Defendants' continued misappropriation of Clinton's publicity rights.

**COUNT XIV**
**Accounting**
**(Against all Defendants)**

201.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

202.   This is a claim for an accounting under state common law.

203.   As alleged hereinabove, Defendants are obligated to accurately and fully account to Clinton for all gross revenues derived from Defendants' exploitation of Clinton's copyrights, trademarks, and rights of publicity.  Clinton is informed and believes and based thereon alleges that Defendants have received profits and/or other valuable consideration and benefits as a result of their unauthorized use of Clinton's copyrights, trademarks, and publicity rights.

204.   As the rightful owner in and to the copyrights, trademarks and publicity rights, Clinton is entitled to an accounting of any and all monies derived from Defendants' use of these rights.

205.   Clinton is entitled to that portion of Defendants' profits attributable to

*the* unauthorized use of Clinton's rights. The amount of these profits is presently unknown and cannot be ascertained without an accounting. The accounting will show any profits now due and owing to Clinton based on Defendants' tortious conduct.

## COUNT XV
## Constructive Trust
## (Against all Defendants)

206.   Plaintiff repeats and realleges the allegations set forth in preceding paragraphs as if fully set forth herein.

207.   This is a claim for a constructive trust under state common law.

208.   As alleged herein, Defendants have wrongfully misappropriated and exploited Clinton's name, image, likeness, trademarks without authorization from Clinton, for their own commercial profit and benefit.

209.   Clinton is informed and believes and based thereon alleges that as a result of the aforesaid misappropriation and unauthorized use by Defendants of his valuable publicity and trademark rights as alleged herein, Defendants have received money and/or other valuable consideration and benefits, and has been unjustly enriched at the expense of Clinton, and will continue to receive money and/or other valuable consideration and benefits in the future from the unauthorized misappropriation, use and exploitation of Clinton's valuable rights.

210. As a direct and proximate result of the acts of misappropriation, use and exploitation of Clinton's valuable publicity and trademark rights by Defendants as alleged herein, Defendants hold any and all money and/or other valuable consideration and benefits received by it from its misappropriation, use and other wrongful acts, including interest thereon, as involuntary constructive trustee in constructive trust for Clinton.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendants, as follows:

1. On the first cause of action, declaratory judgment and injunctive relief:

(a) That Plaintiff is the owner of the copyright interests and renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings;

(b) That Plaintiff has the exclusive rights conferred upon copyright owners under the U.S. Copyright Act in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, including, without limitation, the exclusive right to exploit the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings;

(c)     That Defendants have no interest in and to the copyrights and renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, or any right to exploit the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings;

(d)     That any further action by Defendants in derogation of the exclusive rights of Plaintiff constitutes willful copyright infringement;

(e)     That Defendants disgorge to Plaintiff all benefits, monetary and non-monetary collected or received by Defendants as the purported copyright licensee, user and/or owner of the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings;

(f)     That Defendants re-convey any and all copyright interests and renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings to Plaintiff to the extent necessary to effectuate Plaintiff's rights; and

(g)     That Defendants, at their sole expense, prepare, file, and record any necessary FORM CA "Correction Certificate" filings with the U.S. Copyright Office to correct and/or clarify any filings or registrations which Defendants obtained from the U.S. Copyright Office relating to the musical works and sound

recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings.

2.     On the second cause of action for Defendants' federal copyright infringement:

(a)     Entry of judgment holding Defendants' liable for infringement of the renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings;

(b)     An order permanently enjoining Defendants, their officers, agents, servants, employees, attorneys, and affiliated companies, their assigns and successors in interest, and those persons in active concert or participation with them, from continued acts of infringement of the copyrights or renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings;

(c)     An order that all materials in violation of Plaintiff's copyrights and renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings, and all means by which such materials may be reproduced, be impounded and destroyed or otherwise reasonably disposed of;

(d)   An order that Plaintiff be awarded damages for Defendants' copyright infringement of Plaintiff's copyrights and renewal term copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings as either (i) actual damages in an amount to be determined at trial, together with Defendants' profits derived from its unlawful infringement of Plaintiff's copyrights in and to the musical works and sound recordings comprising the Westbound Sound Recordings and the Warner Brothers Sound Recordings; or (ii) statutory damages for each act of infringement in an amount provided by law, at Plaintiff's election before the entry of a final judgment; and

(e)   An order awarding Plaintiff its costs and attorney's fees under 17 U.S.C. § 505.

3.   On the fourth cause of action, a determination by the Court that said contract has been rescinded and ordering restitution of the consideration paid by Clinton, specifically the Westbound Sound Recordings, and all monies received in the past four years from the exploitation of those masters, with interest at the rate of ten percent per annum from December 1, 2007.

4.   On all remaining claims, damages to be determined at trial;

5.   On all claims, an award of pre-judgment and post-judgment interest;

6.     On all claims, an award of attorney's fees and costs of suit incurred herein; and

7.     Any and all other legal relief as may be available under law and which the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

**Dated:**  12/5/11

Larry Clough
**Attorney for George Clinton**

Counsel to George Clinton:

Jeffrey P. Thennisch
Dobrusin & Thennisch
29 W. Lawrence Street, Suite 210
Pontiac, Michigan 48342
Telephone: (248) 292-2920
Email: jthennisch@patentco.com
*Pro Hac Vice* Application to be filed.

Janet M. Conway
29761 Old Lincoln Highway
Wanship, Utah 84017
Telephone: (435) 659-4122
Email: pfunkesq@aol.com
*Pro Hac Vice* Application to be filed.

## EXHIBIT A

### Report on the Filing of an Action Regarding a Copyright
### Clinton v. Montes, et al.

V3542D883
"Hardcore Jollies"
"Uncle Jam Wants You"
"One Nation Under a Groove"
"Electric Spanking of War Babies"
Name of Author:  George Clinton
Date of registration: September 13, 2006

SR 138278
"America Eats Its Young"
Name of Author: Westbound Records, Inc.
Date of registration: February 7, 1992

SR 138490
"Tales of Kid Funkadelic"
Name of Author: Westbound Records, Inc.
Date of registration: February 7, 1992

SR 142111
"Funkadelic: Let's Take It to the Stage"
Name of Author: Westbound Records
Date of Registration: May 15, 1992

SR 318917
"Cosmic Slop"
Name of Author: Westbound Records
Date of Registration: February 13, 2002

SR 318918
"Standing on the Verge of Getting It On"
Name of Author: Westbound Records
Date of Registration: February 13, 2002

SRu 1-023-017
"(Not Just) Knee Deep S2P"
Name of Author:  Sync2Picture
Date of Registration: June 7, 2011

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge John Kronstadt and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV11- 10062 JAK (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>**312 N. Spring St., Rm. G-8**<br>**Los Angeles, CA 90012** | [ ] **Southern Division**<br>**411 West Fourth St., Rm. 1-053**<br>**Santa Ana, CA 92701-4516** | [ ] **Eastern Division**<br>**3470 Twelfth St., Rm. 134**<br>**Riverside, CA 92501** |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.