1  Paul H. Duvall (SBN 73699)
   E-Mail: pduvall@kingballow.com
2  **KING & BALLOW**
   6540 Lusk Blvd., Suite 250
3  San Diego, CA 92121
   (858) 597-6000  Facsimile: (858) 597-6008
4
   Mark L. Block (SBN 115457)
5  E-Mail: mblock@wargofrench.com
   **WARGO & FRENCH LLP**
6  1888 Century Park East
   Suite 1520
7  Los Angeles, CA 90067
   (310) 853-6355  Facsimile: (310) 853-6333
8
   Attorneys for Defendants Armen Boladian,
9  Westbound Records, Inc., Bridgeport Music, Inc.,
   and Sync2Picture, LLC
10
                    **UNITED STATES DISTRICT COURT**
11
                    **CENTRAL DISTRICT OF CALIFORNIA**
12
                         **WESTERN DIVISION**
13

14  GEORGE CLINTON, an individual,

15          Plaintiff,                      Case No. CV 11-10062-R (SH)

16      vs.
                                           **MEMORANDUM OF POINTS
17  ARMEN BOLADIAN, an individual;         AND AUTHORITIES IN
    WESTBOUND RECORDS, INC., a Michigan    SUPPORT OF DEFENDANTS'
18                                         MOTION FOR SANCTIONS AND
    corporation; BRIDGEPORT MUSIC, INC., a ASSESSMENT OF FEES
19  Michigan corporation; and DOES 1-10,   PURSUANT
                                           TO FED. R. CIV. P. 11, 28 U.S.C. §
20  inclusive,                             1927, LOCAL RULE 11-9, AND
                                           THE COURT'S INHERENT
21          Defendants.                    POWERS**

22                                         **Date:  May 6, 2013
                                           Time: 10:00 am
23                                         Judge: Hon. Manuel L. Real
                                           Courtroom: 8- 2nd Floor**
24

25

26

27

28

1

2

# **TABLE OF CONTENTS**

3

I.    INTRODUCTION ...................................................................................................1

4

II.   FACTUAL BACKGROUND.................................................................................1

5

    A. The Westbound Sound Recordings...................................................................3

6

    B. The Warner Sound Recordings .........................................................................5

7

    C. The Underlying Musical Compositions .............................................................7

8

III.  LEGAL STANDARD ...........................................................................................9

9

IV.  ARGUMENT...................................................................................................... 11

10

    A. Plaintiff's Factual Contentions have No Evidentiary Support............................ 11

11

        i.   Plaintiff's contentions in his Initial Complaint has no evidentiary support 12

12

13

        ii.  Plaintiff's contentions in his Amended Complaint have no evidentiary
            support......................................................................................................... 15

14

15

    B. Plaintiff Makes Factual and Legal Contentions that are Barred a Prior Judgment
       or Otherwise Barred by Res Judicata or Collateral Estoppel .............................17

16

17

    C. Plaintiff and his Counsel Unreasonably Pursued this Action in the Face of Legal
       and Factual Proof that Plaintiff's Claims were Futile and Frivolous .................20

18

19

    D. Plaintiff's Claims and Other Legal Contentions are Unwarranted by Existing
       Copyright Law.....................................................................................................21

20

21

    E. Sanctions Should also be Imposed Against Plaintiff and his Counsel Pursuant to
       28 U.S.C. § 1927 and the Court's Inherent Powers for Pursuing this Action in
       Bad Faith ............................................................................................................22

22

23

V.   CONCLUSION................................................................................................... 23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ............................................................................. 15

*Bader v. Itel Corp. (In re Itel Sec. Litig.),*
  791 F.2d 672 (9th Cir. 1986) .................................................................. 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................. 15

*BTE v. Bonnecaze,*
  43 F. Supp. 2d 619 (E.D. La. 1999) ...................................................... 22

*Cannon v. Loyola Univ. of Chicago,*
  784 F.2d 777 (7th Cir. 1986) .................................................................. 18

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ................................................................................... 23

*Christian v. Mattel, Inc.,*
  286 F.3d 1118 (9th Cir. 2002) ............................................................... 10

*Cooter & Gell v. Hartmarx Corp.,*
  496 U.S. 384 (1990) ................................................................................. 10

*G.C. & K.B. Investments, Inc. v. Wilson,*
  326 F.3d 1096 (9th Cir. 2003) ............................................................... 10

*Gomez v. Vernon,*
  255 F.3d 1118 (9th Cir. 2001) ............................................................... 23

*Greenberg v. Sala,*
  822 F.2d 882 (9th Cir. 1987) .................................................................. 11

*Griffin v. J-Records,*
  398 F. Supp. 2d 1137 (E.D. Wash. 2005) ............................................ 22

*Holgate v. Baldwin,*
   425 F.3d 671 (9th Cir. 2005) .................................................................. 15

*Islamic Shura Council of S. California v. F.B.I.,*
   278 F.R.D. 538 (C.D. Cal. 2011) ...................................................... 10, 11

*Ivanova v. Columbia Pictures Indus., Inc.,*
   217 F.R.D. 501 (C.D. Cal. 2003)........................................................... 17

*King v. Hoover Group, Inc.,*
   958 F.2d 219 (8th Cir. 1992) ................................................................ 17

*Laparade v. Ivanova,*
   116 F. App'x 100 (9th Cir. 2004)...................................................... 17-18

*Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.,*
   210 F.3d 1112 (9th Cir. 2000) .............................................................. 23

*Roadway Express, Inc. v. Piper,*
   447 U.S. 752 (1980)............................................................................. 23

*Simpson v. Lear Astronics Corp.,*
   77 F.3d 1170 (9th Cir. 1996) ................................................................ 10

*Southern Leasing Prtnrs., Inc. v. McMullan,*
   801 F.2d 783 (5th Cir. 1986) ................................................................ 18

*Truesdell v. S. California Permanente Med. Group,*
   209 F.R.D. 169, 174 (C.D. Cal. 2002).................................................. 20

*Zaldivar v. City of Los Angeles,*
   780 F.2d 823 (9th Cir. 1986) ................................................................ 10

## LOCAL RULES

L. R. 11-9..................................................................................................*infra*

## FEDERAL STATUES

28 U.S.C. § 1927 .....................................................................................*infra*

17 U.S.C. §106.................................................................................. 6, 14, 17
17 U.S.C. §114.................................................................................. 6, 14, 17
17 U.S.C. §115.................................................................................. 6, 14, 17

## FEDERAL RULES

Federal Rule of Civil Procedure 11 ..............................................................*infra*

Federal Rule of Civil Procedure 12(b)(6)...................................................... 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS

**INTRODUCTION**

Plaintiff George Clinton and his counsel's approach to the present litigation has been to ignore all of the facts, and the law, and to proceed maliciously and in bad faith with knowledge that they have no valid claim against any of the defendants. Counsel for the defendants wrote several letters to Mr. Clinton's counsel before the Amended Complaint was filed advising of the frivolousness of this lawsuit. Clinton and his counsel filed the Amended Complaint nonetheless. Plaintiff and his counsel should be sanctioned pursuant to Fed. R. Civ. P. 11, 28 U.S.C. § 1927, Local Rule 11-9, and the Court's inherent powers.

This action is frivolous, unreasonable and vexatious for several reasons: (1) Plaintiff does not even plead a valid cause of action against any of the Defendants, and Plaintiff's factual contentions have no evidentiary support; (2) Plaintiff makes factual and legal contentions that are barred by a prior judgment or otherwise barred by res judicata or collateral estoppel; (3) Plaintiff and his counsel unreasonably pursued this action in the face of legal and factual proof provided by Defendants' counsel on multiple occasions that Plaintiff's claims are futile and frivolous; (4) Plaintiff's claims and other legal contentions are unwarranted by existing copyright law; and (5) Plaintiff and his counsel have acted and continue to act in bad faith.

**FACTUAL BACKGROUND**

On December 5, 2011, Plaintiff commenced this action asserting a number of convoluted claims against numerous defendants, including Armen Boladian

("Boladian"), Westbound Records, Inc. ("Westbound"), and Sync2Picture, LLC ("Sync2Picture") (the "Initial Complaint").  Dkt. No. 1. The subjects of Plaintiff's Initial Complaint were two "sets" of sound recordings: Plaintiff alleged one set of claims regarding what he deemed "Westbound Sound Recordings" (albums "Funkadelic," "Maggot Brain," "Free your Mind and Your Ass Will Follow," "America Eats Its Young," "Cosmic Slop," and "Standing on the Verge: The Best of Funkadelic") and alleged a separate set of claims regarding what he deemed "Warner Brothers Sound Recordings" (albums "Hardcore Jollies," "One Nation Under a Groove," "Uncle Jam Wants You," and "Electric Spanking of War Babies)."

Because it had been a year since this action was first commenced, and Plaintiff and his former counsel, Mr. Larry H. Clough, had missed filing deadlines, failed to appear at a hearing, and failed to communicate with Defendants' counsel and the Court, on December 13, 2012, this Court issued an Order to show cause why this action should not be dismissed for lack of prosecution. Dkt. No. 59. On January 4, 2013, Plaintiff requested the Court's approval of substitution of counsel.  Dkt. No. 61. At the January 7, 2013 show cause hearing, the Court heard from Plaintiff's new counsel, Mr. Daniel A. Rozansky and Mr. John J. Lucas, and dismissed this action, with 30 days leave for Plaintiff to file an amended complaint. Dkt. No. 63.

As further discussed below, prior to Plaintiff filing his Amended Complaint (Dkt. No. 65), Defendants' counsel wrote Plaintiff's counsel to advise and provide evidence that the claims made by Plaintiff in his Initial Complaint were frivolous and

demonstrably false, and that the claims Plaintiff intended to assert in his Amended Complaint were also frivolous and sanctionable. Duvall Decl., Ex. 1, 2 and 3. Specifically, Plaintiff provided copies of relevant court orders and transcripts from prior litigation between Plaintiff and Bridgeport Music, Inc. ("Bridgeport"), agreements between Plaintiff and Westbound, and relevant correspondence between Plaintiff's and Bridgeport's past lawyers. *See* Exhibits A - H attached to Duvall Decl., Ex. 1 and Exhibits A-C attached to Duvall Decl., Ex. 3. Despite the correspondence from Defendants' counsel, and supporting documents establishing Plaintiff's claims have no merit and/or are barred, Plaintiff filed his Amended Complaint on February 6, 2013 (the "Amended Complaint"). Dkt. No. 65.

### 1. The "Westbound Sound Recordings"

In Plaintiff's Initial Complaint regarding the Westbound Sound Recordings, Plaintiff claimed that he and Westbound never entered into a written agreement, and asked the Court to rescind an allegedly oral agreement on the grounds that Westbound supposedly never accounted to or paid Clinton any royalties. Dkt. No. 1, ¶ 39, 109-116. In response to those claims, on December 19, 2012, Defendants' counsel wrote to Plaintiff's counsel and advised that these claims by Plaintiff were fabricated and demonstrably false. Counsel attached to the letter, among other things, written agreements Plaintiff and Westbound entered into in 1972 and 1975, and other exhibits showing the falsity of the allegations. Duvall Decl., Ex. 1.

Defendants advised that in 1975, Clinton wanted to terminate his written recording agreements with Westbound. *See* Ex. A attached to Duvall Decl., Ex. 1.  On September 24, 1975, as a result, Clinton and Westbound entered into a termination agreement, in which Clinton acknowledged and agreed that Westbound "shall retain in perpetuity the exclusive worldwide right, title and interest in and to all master recordings and the copyrights thereon embodying the performances of the Group [Funkadelic] delivered to [Westbound] prior to the date of this Agreement and that with respect to these previously delivered master recordings, the same shall be subject to our royalty obligations to you as are contained in the Agreement." (emphasis added).  *See* Ex. B, ¶ 3 attached to Duvall Decl., Ex. 1.  "The Agreement" identifying the royalty obligations is a 1972 written agreement between Clinton and Westbound. *See* Ex. C attached to Duvall Decl., Ex. 1.  Defendants' counsel further noted in his letter to Plaintiff's counsel that neither of the 1972 or 1975 Agreements are mentioned in any way in the Complaint and that Plaintiff's allegation of only a verbal agreement between the parties is demonstrably false.

Because Plaintiff has made it a practice of denying he signed or entered into various agreements over the years, Defendants' counsel also provided letters between Plaintiff's lawyer and Westbound's lawyer, in which the lawyers discuss Plaintiff's delivery obligations under the September, 1975 agreement. *See* Ex. D attached to Duvall Decl., Ex. 1.  Defendants' counsel further noted Plaintiff also received royalties and accountings under his agreements with Westbound, as reflected in letters his

lawyers wrote to Westbound in which they asked for clarification of statements, and supposedly missing statements, which were provided. *See* Ex. E attached to Duvall Decl., Ex. 1.

Defendants' counsel further noted that Plaintiff's claims regarding the Westbound Sound Recordings failed as a matter law as Plaintiff did not list on his 1984 bankruptcy schedules any rights to receive royalties from the Westbound Sound Recordings and provided the law in support. Duvall Decl., Ex. 1, at 2-3.

## 2. The "Warner Sound Recordings"

In Plaintiff's Initial Complaint regarding the Warner Sound Recordings, Plaintiff claimed that Westbound released the albums "*Toys*" and "*Standing on the Verge: The Best of Funkadelic,*" which allegedly contained certain Warner Sound Recordings. Dkt. No. 1, ¶ 63. In addition, Plaintiff claimed that Sync2Picture allegedly registered the Warner Sound Recording "(Not Just) Knee Deep", wrongfully claimed Sync2Picture has the right to license the recording, and supposedly uses Plaintiff's trademark and/or name, image, and likeness in connection with "(Not Just) Knee Deep." Dkt. No.1, ¶ 109-116; 156-174.

In response to those claims, on December 31, 2012 and January 18, 2013, Defendants' counsel wrote Plaintiff's new counsel Messrs. Rozansky and Lucas and advised that Westbound and Sync2Picture have never claimed ownership to the Warner Sound Recordings. Duvall Decl., Ex. 2 and 3. Counsel further explained that any such claims against Sync2Picture for alleged exploitation of the Warner Sound Recordings was frivolous and sanctionable as Sync2Picture has never exploited or sold any of the

Warner Sound Recordings. *Id.* Defendants' counsel explained that while Sync2Picture created certain new recordings of the compositions embodied in the Warner Sound Recordings, the Copyright Act allows a party wishing to do so the absolute right to create new recordings by obtaining either a compulsory license or negotiated license from the *publisher* of the musical compositions embodied on the recording. As explained by Defendants' counsel, Bridgeport owns the underlying musical compositions and therefore Bridgeport is well within its rights to grant such permission to Sync2Picture. Defendants' counsel referred Plaintiff's counsel to 17 U.S.C. §106, §114, and §115. Defendants' counsel explained that Plaintiff's recorded performance from the Warner Sound Recordings is not included on any of these new master recordings of the compositions embodied in the Warner Sound Recordings, and these new recordings of the compositions embodied in the Warner Sound Recordings have never been licensed or sold by Sync2Picture. *Id.*

Despite the foregoing, Plaintiff filed an Amended Complaint. Dkt. No. 65. While Plaintiff omitted all claims regarding the Westbound Sound Recordings and omitted all factual claims regarding the Warner Sound Recordings, nevertheless, Plaintiff now makes broad, general allegations of copyright infringement regarding the Warner Sound Recordings, with no factual support. *Id.*

### 3. The Underlying Musical Compositions

Upon learning that Plaintiff's new counsel only intended to assert claims regarding the Warner Sound Recordings, Defendants' counsel not only advised

Plaintiff's counsel that Plaintiff's claims regarding the Warner Sound Recordings are frivolous (as discussed above), but further advised that any claims regarding the *underlying compositions* to the Warner Sound Recordings would also be frivolous. Duvall Decl., Ex. 3.

The underlying musical compositions and the Warner Sound Recordings are two distinct sets of intellectual property. In 1999, Clinton filed a lawsuit in federal court in the Northern District of Florida, challenging the validity of a December 2, 1983 agreement establishing that Clinton and his publishing company, Malbiz Music, Inc. ("Malbiz"), assigned ownership of all musical compositions written in whole or in part by him to Bridgeport, and claimed a right to songwriter and publishing royalties. *Clinton, et al. v. Boladian*, et al., Case No. 4:99cv242-RH. The federal court made two holdings: (1) Clinton was barred from receiving any songwriter or publishing royalties from any songs he wrote because he did not list any right to royalties on his 1984 bankruptcy petition; and (2) Clinton signed the December 2, 1983 assignment, and had the authority to do so, by which his publishing company assigned ownership of all musical compositions to Bridgeport. Declaration of Paul H. Duvall ("Duvall Decl.), Ex. 4 and 5.   Clinton's appeal and post trial motions were dismissed and denied respectively. Duvall Decl., Ex. 6.  As a result, Clinton has no right to any songwriter or publishing royalties on any of those musical compositions, including the underlying musical compositions to the Warner Sound Recordings, and defendant Bridgeport owns all such musical compositions.

Nevertheless, according to vague and confusing statements in Plaintiff's Amended Complaint, Plaintiff and his counsel appear to not understand and/or misapply the fundamental distinction between musical composition copyrights and sound recordings copyrights. For example, Plaintiff states "Defendants, on the other hand, claim to have rights, including, but not limited to, publishing, composition and sound recordings rights, in and to the sound recordings in the Warner Sound Recordings," (Dkt. No. 65, ¶ 48), but publishing and composition rights have nothing to do with sound recordings and relate solely to musical compositions. Further, Plaintiff added Bridgeport as a defendant, despite the fact that Plaintiff is well aware Bridgeport is a music publishing company that deals exclusively with musical compositions and therefore has absolutely nothing to do with sound recordings at all, much less the Warner Sound Recordings. *Id.*, Declaration of Armen Boladian, attached to Duvall Decl., Ex. 7. As a result, there is no basis whatsoever for Bridgeport to be a defendant in this action, and Clinton and his counsel know it. Not only is Clinton aware of this fact by being on the losing end of the litigation concerning ownership of musical compositions he wrote in whole or in part, but his new counsel is also undoubtedly aware of this fact because counsel for defendants explained it to him, with supporting exhibits, before the filing of the Amended Complaint. *See* Duvall Decl., Ex. 1, 2 and 3.

Based on the foregoing, it is clear that the claims asserted by Plaintiff and Mr. Clough in the Initial Complaint and by Plaintiff and Messrs. Rozansky and Lucas in the Amended Complaint were frivolous and baseless, and that all of them were fully aware

of these facts. Therefore, this Court should issue sanctions against each of them pursuant to Rule 11 of the Federal Rules of Civil Procedure, Local Rules 11-9 and 83-7, 28 U.S.C. § 1927, and the court's inherent powers.

## LEGAL STANDARD

Local Rule 11-9 of the Central District of California Local Rules provides that "[t]he presentation to the Court of frivolous motions or opposition to motions (or failure to comply fully with this rule) subjects the offender at the discretion of the Court to the sanctions of L.R. 83-7." The sanctions provided by L.R. 83-7 are as follows:

(a)   Monetary sanctions, if the Court finds that the conduct was willful, grossly negligent, or reckless;

(b)   The imposition of costs and attorneys' fees to opposing counsel, if the Court find that the conduct rises to the level of bad faith and/or a willful disobedience of a court order; and/or

(c)   For any of the conduct specified in (a) and (b) above, such other sanctions as the Court may deem appropriate under the circumstances.

Similarly, Rules 11(b) and (c) of the Federal Rules of Civil Procedure permit a court to impose sanctions on the parties or their attorneys who violate its directive that all papers presented to the court are (1) factually and legally tenable from an objective perspective, (2) not submitted for "any improper purpose," and (3) presented after "an inquiry reasonable under the circumstances." Fed. R. Civ. P. 11(b)-(c); *see Islamic*

*Shura Council of S. California v. F.B.I.*, 278 F.R.D. 538, 543 (C.D. Cal. 2011), *citing Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002); *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996). Reasonable inquiry means that the pleader must seek "sufficient credible information," rather than proceeding on mere suspicions, opinions, or conclusions. *Islamic Shura Council of S. California*, 278 F.R.D. at 543.

Sanctions may also be imposed under Rule 11 if the pleader fails to make "an inquiry reasonable under the circumstances" before submitting the paper, and such failure results in the filing of a frivolous motion. Fed. R. Civ. P. 11(b).

In determining whether particular conduct violates Rule 11(b), the Ninth Circuit has used an objective "reasonableness" standard. *G.C. & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003); *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986), *abrogated on other grounds by Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399 (1990). Even where the conduct was not done with subjective bad faith, sanctions are proper if the conduct is frivolous, legally unreasonable, or without factual foundation. *Zaldivar*, 780 F.2d at 831. The legal basis of a pleader's contentions must be based on a "good faith argument for his or her view of what the law is, or should be," and "[a] good faith belief in the merit of a legal argument is an objective condition which a competent attorney attains only after reasonable inquiry." *Id.* at 831.

///

# **ARGUMENT**

## A. PLAINTIFF'S FACTUAL CONTENTIONS HAVE NO EVIDENTIARY SUPPORT

Sanctions are proper if "a pleading, written motion, or other paper" presented and certified to the Court contains one of the following: (i) factual contentions or denials of factual contentions lacking evidentiary support or (ii) claims, defenses, and other legal contentions unwarranted by "existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2)-(4); *Islamic Shura Council of S. California*, 278 F.R.D. at 543, *citing Greenberg v. Sala,* 822 F.2d 882, 885 (9th Cir. 1987).

Plaintiffs' Initial and Amended Complaint violates the requirement under Rule 11(b)(3) that factual contentions must have evidentiary support. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: [...] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

### i.   *Plaintiff's contentions in his Initial Complaint had no evidentiary support*

In Plaintiff's Initial Complaint, Plaintiff and Mr. Clough alleged claims against the Defendants regarding two "sets" of sound recordings: Plaintiff alleged one set of

claims against Westbound and Boladian regarding what he deemed "Westbound Sound Recordings" and alleged a separate set of claims against Westbound and Sync2Picture regarding what he deemed "Warner Brothers Sound Recordings" or "Warner Sound Recordings." Dkt. No. 1. Regarding the Westbound Sound Recordings, Plaintiff claimed that he and Westbound never entered into a written agreement, and asked the Court to rescind an allegedly oral agreement on the grounds that Westbound supposedly never accounted to or paid Clinton any royalties. Dkt. No. 1, ¶ 39, 109-116. As provided in the December 19, 2012 correspondence from Defendants' counsel to Plaintiff's counsel, these claims by Plaintiff are demonstrably false. Duvall Decl., Ex. 1.

In 1975, Plaintiff wanted to terminate his written recording agreements with Westbound. *See* Ex. A attached to Duvall Decl., Ex. 1. On September 24, 1975, as a result, Plaintiff and Westbound entered into a termination agreement, in which Plaintiff acknowledged and agreed that Westbound "shall retain in perpetuity the exclusive worldwide right, title and interest in and to all master recordings and the copyrights thereon embodying the performances of the Group [Funkadelic] delivered to [Westbound] prior to the date of this Agreement and that with respect to these previously delivered master recordings, the same shall be subject to our royalty obligations to you as are contained in the Agreement." (emphasis added). *See* Ex. B, ¶ 3 attached to Duvall Decl., Ex. 1. "The Agreement" identifying the royalty obligations is a 1972 written agreement between Plaintiff and Westbound. *See* Ex. C attached to Duvall Decl., Ex. 1. Notably neither of the 1972 or 1975 Agreements were mentioned in any

way in Plaintiff's Initial Complaint. *See* Dkt. No. 1. Thus, Plaintiff's allegation of only a verbal agreement between the he and Westbound not only lacked evidentiary support but is demonstrably false.

Defendants' counsel also presented numerous subsequent letters between Plaintiff's lawyer and Westbound's lawyer, in which the lawyers discuss Plaintiff's delivery obligations under the 1975 agreement and discussed the royalties and accountings Plaintiff received under his agreements with Westbound, thus proving the falsity of Plaintiff's claim that only an "oral agreement" existed with Westbound and that he had "never been properly accounted or paid royalties".[1]  *See* Ex. D and E attached to Duvall Decl., Ex. 1.

Last, Plaintiff's claims against Sync2Picture regarding the Warner Sound Recording "(Not Just) Knee Deep" also lacked evidentiary support.  Dkt. No.1, ¶ 109-116; 156-174. As provided in the January 18, 2013 correspondence from Defendants' counsel to Plaintiff's counsel, Sync2Picture has never exploited or sold any of the Warner Sound

---

[1] In addition to being clearly fabricated and false, Plaintiff's claim that "in the past 40 years, the Westbound Sound Recordings have consistently generated millions of dollars through direct sales and sampling by other artists, yet Westbound has never properly accounted or paid Clinton royalties," (Dkt. No. 1, ¶ 39) is obviously barred by the statute of limitations and laches. Also, as noted in Defendants' counsel's December 19, 2012 correspondence, is barred by that fact that Plaintiff failed to list on his bankruptcy schedules any right to receive royalties from the Westbound Sound Recordings, but listed Westbound, Boladian, Bridgeport and related companies as creditors to the tune of more than $2 million. Ex. G attached to Duvall Decl., Ex. 1. Finally, the claim is belied by the letters that Westbound's lawyer exchanged with Clinton's lawyer prior to Clinton's bankruptcy, which were attached to counsel's December 19, 2012 letter to Plaintiff's counsel. *See* Ex. D and E attached to Duvall Decl., Ex. 1.

Recordings, much less the Warner Master of "(Not Just) Knee Deep." Duvall Decl., Ex. 3. While Sync2Picture created *new* recordings of certain compositions embodied in the Warner Sound Recordings, the Copyright Act allows a party wishing to do so the absolute right to create new recordings by obtaining either a compulsory license or negotiated license from the *publisher* of the musical compositions embodied on the recording. *See* 17 U.S.C. §106, §114, and §115. As Bridgeport owns the underlying musical compositions pursuant to the December 2, 1983 agreement between Plaintiff, his publishing company, Malbiz, and Bridgeport (Ex. A and B attached to Duvall Decl., Ex. 3), Bridgeport is well within its rights to grant such permission to Sync2Picture. *Id.* Plaintiff's recorded performance is not included on any of these new master recordings of the Warner Sound Recordings, and these new recordings of the Warner Sound Recordings have never been licensed or sold by Sync2Picture. *Id.* Accordingly, all of Plaintiff's claims in his Initial Complaint against Boladian, Westbound, and Sync2Picture had absolutely no evidentiary support, and therefore he and his counsel at the time, Mr. Clough, should be sanctioned pursuant to Fed. R. Civ. P. 11(b)(3).[2]

_____

[2] The Ninth Circuit has held that "[t]he signing requirement in Rule 11 makes clear that any attorney who, at any time, certified to the court that a pleading complies with Rule 11 is subject to the rule, even if the attorney later withdraws from the case." *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005). Therefore, an attorney who is allowed to withdraw as counsel is not protected from sanctions under Rule 11 based on a filing made before the withdrawal. *Id.*, citing *Bader v. Itel Corp. (In re Itel Sec. Litig.)*, 791 F.2d 672, 675 (9th Cir. 1986) (observing that case law provides "absolutely no hint . . . that a lawyer may escape sanctions for misconduct simply by withdrawing from a case before opposing counsel applies for sanctions").

### ii.     *Plaintiff's contentions in his Amended Complaint have no evidentiary support*

Like Plaintiff's contentions in his Initial Complaint, his claims in his Amended Complaint are frivolous and have no evidentiary support. While Plaintiff omitted his frivolous claims proven false above, Plaintiff and his counsel nevertheless filed an Amended Complaint on February 6, 2013, alleging Defendants had infringed on his copyright interest to the Warner Sound Recordings and requested declaratory relief. Dkt. No. 65.  Perplexingly, Plaintiff added Bridgeport as a defendant, despite the fact that Plaintiff is well aware Bridgeport is a music publishing company that deals exclusively with musical compositions and therefore has absolutely nothing to do with sound recordings, much less the Warner Sound Recordings. Dkt. 65;  Duvall Decl., Ex. 7, ¶ 7. In asserting his claims for copyright infringement and declaratory relief, Plaintiff presented *no* facts in support.[3]  *See* Dkt. No. 65. Indeed, Plaintiff could not do so because no evidentiary support exists for Plaintiff's new claims.

While Plaintiff claims the Defendants have infringed on Plaintiff's purported copyrights and exclusive rights to the Warner Sound Recordings in *very general terms*, Plaintiff *does not identify any facts or evidence in support*, such as who, what, when, where, how and to whom the Warner Sound Recordings were "reproduce[d], display[ed],

---

[3] Accordingly, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for Plaintiff's failure to state a claim upon which relief may be granted under the standards expressed in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). Dkt. No. 66.

distribut[ed] and utilize[ed] for purposes of trade and promotion." Dkt. 65, ¶ 41-49. As noted in Defendants' counsel's December 31, 2012 and January 18, 2012 correspondence to Plaintiff's counsel, no such evidence exists. Duvall Decl., Ex. 2 and 3.

First, the Defendants have never claimed ownership to the Warner Sound Recordings and Plaintiff has not and cannot provide any evidence to the contrary. Duvall Decl., Ex. 2 and 3. Second, to the extent Plaintiff is claiming ownership and/or rights to the underlying compositions of the Warner Sound Recordings[4], that issue has already been litigated over ten years ago in the Northern District of Florida with Bridgeport being declared the owner of all of those compositions and the court holding that Plaintiff is barred from receiving any songwriter or publishing royalties at all because he did not list any right to royalties on his 1984 bankruptcy petition. *See* Duvall Decl., Ex. 4 and 5.

Last, just as Plaintiff's claim against Sync2Picture in his Initial Complaint lacked evidentiary support, the infringement claim against Sync2Picture in his Amended Complaint has no evidentiary support. Again, Sync2Picture has never exploited or sold any of the Warner Sound Recordings, but has created *new* recordings of *the underlying musical compositions* to certain Warner Sound Recordings, which is absolutely lawful and permitted under the copyright act provided the party wishing to do so obtains either a compulsory license or negotiated license from the *publisher* (in this instance Bridgeport)

---

[4] Based on Plaintiff's vague and convoluted claims, it is unclear whether Plaintiff is asserting this or not.

of the musical compositions embodied on the recording. *See* 17 U.S.C. §106, §114, and §115. As Plaintiff's recorded performance is not included on any of these new master recordings of the Warner Sound Recordings, and these new recordings of the Warner Sound Recordings have never been licensed or sold by Sync2Picture, there has been no infringement by Sync2Picture and Plaintiff has no evidence to the contrary. Duval Decl., Ex. 1 and 2.

Accordingly, all of Plaintiff's claims in his Amended Complaint have no evidentiary support and therefore he and his new counsel, Messrs. Rozansky and Lucas, should be sanctioned pursuant to Fed. R. Civ. P. 11(b)(3).

## B. PLAINTIFF MAKES FACTUAL AND LEGAL CONTENTIONS THAT ARE BARRED BY A PRIOR JUDGMENT OR OTHERWISE BARRED BY RES JUDICATA OR COLLATERAL ESTOPPEL

The Central District of California has held that an attorney violates Rule 11 by filing a complaint that includes factual or legal contentions that are barred by a prior judgment or otherwise barred by res judicata or collateral estoppel. *Ivanova v. Columbia Pictures Indus., Inc.,* 217 F.R.D. 501, 512 (C.D. Cal. 2003), *aff'd sub nom. Laparade v. Ivanova,* 116 F. App'x 100 (9th Cir. 2004), *citing King v. Hoover Group, Inc.,* 958 F.2d 219, 223 (8th Cir. 1992); *Southern Leasing Prtnrs., Inc. v. McMullan,* 801 F.2d 783, 788–89 (5th Cir. 1986); *Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777, 782 (7th Cir. 1986). In *Ivanova,* the Central District of California imposed several sanctions against Plaintiff for asserting claims, including a copyright infringement

claim, that were barred by prior judgments, including a stipulated judgment between the parties. *Ivanova*, 217 F.R.D. at 512-514.

While Plaintiff's Amended Complaint generally appears to only raise claims with respect to the Warner Sound Recordings and not the underlying compositions, some statements made by Plaintiff suggest otherwise. For example, Plaintiff states: "Plaintiff owns the Warner Sound Recordings, and the sound recordings embodied in the Warner Sound Recordings," and Defendants produced ... sound recordings containing the Warner Sound Recordings. Dkt. No. 65, ¶ 31, ¶ 36. These statements make no sense. There are no sound recordings "embodied in the Warner Sound Recordings," or "sound recordings containing Warner Sound Recordings" as the Warner Sound Recordings are themselves sound recordings. The only work embodied in a master recording, is the underlying composition. Similarly, Plaintiff states "Defendants, on the other hand, claim to have rights, including, but not limited to, publishing, composition and sound recordings rights, in and to the sound recordings in the Warner Sound Recordings." Dkt. No. 65, ¶ 48. "Publishing" and "composition" rights are separate from sound recordings rights and would only pertain to the underlying compositions to the Warner Sound Recordings. Further, Plaintiff now names Bridgeport as a Defendant, a publishing company that has absolutely nothing to do with sound recordings. Duvall Decl., Ex. F, ¶ 7.

Nevertheless, to the extent Plaintiff is alleging ownership and/or rights to royalties of the underlying compositions to the Warner Sound Recordings, Plaintiff is

barred from doing so by the prior judgment from the Northern District of Florida or otherwise barred by res judicata or collateral estoppel. Plaintiff and his counsel are well aware of this fact.

In 1999, Plaintiff and his publishing company filed an action against Boladian and Bridgeport in the United States District Court for the Northern District of Florida (the "Florida action"), in which he challenged the validity of the December 2, 1983 assignment of the musical compositions to Bridgeport on multiple grounds, and claimed a right to songwriter and publishing royalties. The federal court made two holdings: (1) Plaintiff was barred from receiving any songwriter or publishing royalties at all because he did not list any right to royalties on his 1984 bankruptcy petition; and (2) Plaintiff did sign the December 2, 1983 assignment, and had the authority to do so, by which his publishing company assigned ownership of all musical compositions to Bridgeport. *See* Duvall Decl., Ex. 4 and 5. Plaintiff's appeal and post trial motions were dismissed and denied respectively. Duvall Decl., Ex. 6. As a result, Plaintiff has no right to any songwriter or publishing royalties on any of those songs and to the extent he is claiming so in his Amended Complaint, he is precluded from making such claims considering this exact issue between the same parties was already previously litigated with the resulting judgment in Bridgeport's favor. Accordingly, if Plaintiff did in fact plead claims regarding the underlying compositions to the Warner Sound Recordings, he and his counsel are well aware that the Plaintiff is barred from doing so and thus should be sanctioned.

## C. PLAINTIFF AND HIS COUNSEL UNREASONABLY PURSUED THIS ACTION IN THE FACE OF LEGAL AND FACTUAL PROOF THAT PLAINTIFF'S CLAIMS WERE FUTILE AND FRIVOLOUS

The Central District of California has imposed sanctions against a plaintiff's counsel for filing a complaint in the face of the defendant's counsel presenting legal and factual proof on several occasions demonstrating why the claims asserted in the complaint were futile and frivolous. *Truesdell v. S. California Permanente Med. Group*, 209 F.R.D. 169, 174 (C.D. Cal. 2002). In *Truesdell*, the plaintiff's counsel persisted in prosecuting and filing claims without any reasonable basis in law or fact to believe the claims had any merit, and despite the fact that the defendant's counsel gave at least three opportunities to withdraw the claims, and on each occasion cited to relevant authority demonstrating the speciousness of the claims in the Complaint. *Id.* at 177. The court found that an award of attorney's fees and costs reasonably expended by the defendant would be a reasonable deterrent to the plaintiff's counsel and others. *Id.* at 178.

Like plaintiff's counsel in *Truesdell*, here Plaintiff's counsel was presented on numerous occasions with legal and factual proof that Plaintiff's claims were futile and frivolous. Duvall Decl., Ex. 1, 2, and 3. Upon learning of Mr. Lucas' and Rozansky's intent to substitute Mr. Clough in this action, and their further intent to pursue claims related solely to the Warner Sound Recordings, Defendants' counsel wrote them to specifically present the legal and factual proof that any claims made by Plaintiff regarding the Warner Sound Recordings would be futile and frivolous. *Id.*

As discussed in *Section A. ii*, above, Defendants' counsel advised that Defendants have never claimed ownership to the Warner Sound Recordings, that Bridgeport owns the underlying compositions to the Warner Sound Recordings, and that Plaintiff has no right to any songwriter or publishing royalties on any of those musical compositions. Duvall Decl., Ex. 2 and 3.  Despite the legal and factual proof that any claims by Plantiff regarding the Warner Sound Recordings would be futile and frivolous, and Defendants' counsel's warning they would pursue sanctions, Plaintiff and his counsel filed the Amended Complaint asserting the very claims proven to lack merit. This is not reasonable behavior and like the plaintiffs in *Truesdell*, Plaintiff and his counsel should be sanctioned.

## D. PLAINTIFF'S CLAIMS AND OTHER LEGAL CONTENTIONS ARE UNWARRANTED BY EXISTING COPYRIGHT LAW

In addition to Plaintiff's factual contentions lacking evidentiary support, Plaintiff's claims and other legal contentions are also unwarranted by existing copyright law and therefore violate the Rule 11(b)(2) requirement that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

As discussed in Defendants' Motion to Dismiss (Dkt. 66), Plaintiff's Amended Complaint is not only vague and ambiguous, but as a general matter, Plaintiff and his counsel failed to recognize the distinction between sound recording copyrights and

musical composition copyrights, a basic principle of copyright law. See *BTE v. Bonnecaze*, 43 F. Supp. 2d 619, 627-28 (E.D. La. 1999) and *Griffin v. J-Records*, 398 F. Supp. 2d 1137, 1142-43 (E.D. Wash. 2005).

Sound recording rights and musical composition rights are two distinct sets of rights, and as the federal court in Florida ruled, Plaintiff does not own the underlying compositions. Duvall Decl., Ex. 4 and 5. Yet, Plaintiff makes statements that suggest he thinks as the purported owner of the Warner Sound Recordings, that his rights equate to those who own the underlying compositions. Dkt. No. 65, ¶ 48.[5] In doing so, Plaintiff wrongfully extends the exclusive rights afforded owners of sound recording copyrights beyond its perimeters. In addition, Plaintiff has perplexingly added Bridgeport as a Defendant to this action, a publishing company that deals exclusively with musical compositions and therefore has nothing to do with the Warner Sound Recordings. Duvall Decl., Ex. F, ¶ 7-8. Accordingly, sanctions are warranted against Plaintiff and his counsel for making claims that are unwarranted by existing and accepted principles of copyright law.

---

[5] Plaintiff and his counsel are well aware that this Court's June 20, 2005 Findings of Fact and Conclusions of Law and subsequent Order (referenced by Plaintiff in his Amend. Compl. at ¶ 19-31) deals only with the Warner Sound Recordings at subject of that Order and not the underlying compositions. Indeed, in the Court's Findings of Fact and Conclusions of Law, the Court references the 2001 decision of the federal court in Florida regarding the underlying compositions and specifically notes its 2005 Order does not apply to those compositions, but to only the Warner Sound Recordings. *See* Dkt. 66-2, Ex. D, at 4 ¶23 and 8 ¶11-12.

**E. SANCTIONS SHOULD ALSO BE IMPOSED AGAINST PLAINTIFF AND HIS COUNSEL PURSUANT TO 28 U.S.C. § 1927 AND THE COURT'S INHERENT POWERS FOR PURSUING THIS ACTION IN BAD FAITH**

The Court should also sanction Plaintiff and his counsel pursuant to 28 U.S.C. § 1927 and its inherent powers because Plaintiff and his counsel have acted in bad faith and in doing so, have vexatiously and unreasonably multiplied the proceedings. "Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000). Similarly, the imposition of sanctions under the court's inherent power is warranted where a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," and willfully abused the judicial processes. *Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001), *citing Roadway Express, Inc. v. Piper,* 447 U.S. 752, 766, (1980); *see also Chambers v. NASCO, Inc.,* 501 U.S. 32, 46–47, (1991).

By ignoring the legal, factual, and documentary evidence that Plaintiff's claims lacked merit and pursuing this action regardless, Plaintiff and his counsel acted in bad faith.  Plaintiff has vexatiously multiplied the proceedings by filing two frivolous complaints. Plaintiff and his counsel have persisted in prosecuting and filing claims without any reasonable basis in law or fact to believe Plaintiff's claims had any merit. They further did so despite Defendant's counsel's warning based on the provided legal, factual, and documentary evidence that should Plaintiff pursue his frivolous claims by filing an amended complaint, that Defendants would seek sanctions.  The filing of the

1  Amended Complaint was without a doubt done in bad faith and vexatiously and Plaintiff

2  and his counsel should be sanctioned accordingly.

3

4                                    **CONCLUSION**

5      In the absence of any evidence of a proper purpose, or any contention supported

6  by existing law and evidence, it is clear Plaintiff and his counsel bring this suit in bad

7

8  faith and for the sole purpose of harassing the Defendants and causing them to incur

9  legal fees. Plaintiff and his counsel pursued this action, despite being presented on

10  numerous occasions with legal and factual proof that Plaintiff's claims were futile and

11

12  frivolous. Based on the foregoing, Defendants respectfully request Plaintiff and his

13  former and current counsel be sanctioned pursuant to Fed. R. Civ. P. 11, 28 U.S.C. §

14

15  1927, Local Rule 11-9, and the Court's inherent powers, and grant Defendants such other

16  relief as the Court may deem just and proper.

17

    DATED:  March 28, 2013              Respectfully submitted,

18

19                                      PAUL H. DUVALL
                                        KING & BALLOW

20

21                                      By:

22                                           PAUL H. DUVALL

23                                      Attorney for  Defendants Armen
                                        Boladian, Westbound Records, Inc.,
24                                      Bridgeport, Music, Inc., and
                                        Sync2Picture, LLC

25

26

27

28